# ROYAL BREWING COMPANY, Respondent, v. ST. LOUIS BREWING ASSOCIATION, Appellant.

### Kansas City Court of Appeals, May 3, 1915.

1. **CONTRACT*S*: Damages: Return of Goods.** This is an action instituted by plaintiff to recover from the defendant damages for a breach of contract. Plaintiff entered into a contract to buy beer in the bottle from the defendant and defendant agreed among other things to pay twenty-five cents per dozen for all empty bottles, which the plaintiff returned. After-
188MA43

wards plaintiff claims defendant's manager agreed to allow plaintiff a rebate of the amount of the freight charges it would save on bottles shipped to plaintiff, but not afterwards returned. Defendant accepted two carloads of bottles, paid the agreed price, but afterwards insisted that plaintiff keep all bottles and be allowed freight rebate. The plaintiff ordered more beer, when finally business relations were severed, and this action brought. *Held*, that plaintiff became the owner of the bottles upon their return by the customer and the defendant was bound to purchase all such bottles at twenty-five cents per dozen.

2. ———: **Offer and Acceptance.** To create a contract by offer and acceptance the acceptance must be unequivocal, unconditioned and in exact accordance with the offer. It must not vary from the offer either by way of omission, addition, or alteration. The assent must be absolute and final.

3. ———: **Mutuality: Unilateral Agreements.** A contract is lacking in mutuality and is unilateral when it consists of a promise not in consideration of another promise.

3. ———: ———. To make a contract unilateral and therefore void, it is essential that there should be no mutuality of obligation, that only one party thereto should be bound thereby.

4. ———: **Option: Breach.** Among the options a vendor of personal property has when the vendee breaches the contract by refusing to accept a delivery of the property is that of treating the sale as ended by the buyer's default and the property as his (the vendor's) and to recover the actual loss sustained which is ordinarily the difference between the agreed price and the market price.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*Edw. C. Kehr, M. C. Early* and *F. V. Kander* for appellant.

(1) To create a contract by offer and acceptance the acceptance must be unequivocal, unconditional and in exact accordance with the offer. It must not vary from the offer either by way of omission, addition or alteration. The assent must be absolute and final. Scott v. Davis, 141 Mo. 213-25; Gaus v. Chicago L. Co.,

115 Mo. App. 119; Batavia v. Railroad, 126 Mo. App. 15-18; Sarran v. Richards, 151 Mo. App. 656-60; Strange v. Crowley, 91 Mo. 287-95; Robinson v. Railroad, 75 Mo. 498; Taylor v. Von Schrader, 107 Mo. 206-225; James and Sons v. Fruit I. & B. Co., 68 Mo. App. 207-13-16; Spencer v. Pike, 183 Fed. 894. (2) The acceptance of a proposal coupled with a modification is in law a rejection, and becomes in its modified form a new proposal, which requires acceptance in turn in order to constitute a contract. Shickle v. Chouteau, 10 Mo. App. 241-6, 84 Mo. 161-3; Egger v. Nesbit, 122 Mo. 667-74-8; Union Service Co. v. Drug Co., 148 Mo. App. 327-36-7; Brecheisen v. Coffey, 15 Mo. App. 80. (3) The effect of letters alleged to constitute a contract by corespondence is a question of law for the court, and a party is not entitled to have the question of whether a contract has been formed, and if so, on what terms, submitted to the jury. Union Service Co. v. Drug Co., 148 Mo. App. 328-37; Eagle Mill Co. v. Caven, 76 Mo. App. 458; Falls Wire Mfg. Co. v. Broderick, 12 Mo. App. 378; Telluride Power Co. v. Crane Co., 208 Ill. 70. (4) If plaintiff was not bound to return the empties defendant was not bound to accept them—in such case the contract was unilateral—that is, lacking in mutuality—and therefore void. Plaintiff has claimed only that it had the privilege to return empties, if it saw fit to do so. It does not contend that it was obligated to return any empties and therefore defendant was not bound to receive any. Iron and Rail Co. v. Railroad, 148 Mo. App. 173.

*Harry L. Jacobs* and *I. J. Ringolsky* for respondent.

JOHNSON, J.—This is an action to recover damages in the sum of $3372.31, for breach of contract. A jury was waived and after hearing the evidence the court rendered judgment for plaintiff for $2358.90, and defendant appealed.

Plaintiff is a corporation operating a brewery at Weston and a branch office and sales department thereof at Kansas City. Seventy-five per cent of its capital stock is owned by the five Danciger brothers who are members of its board of directors which consists of seven members. These brothers are the proprietors of two other business establishments in Kansas City engaged in the liquor business, one of which is conducted under the name of Danciger Brothers, and the other under the trade name of Schiller Brothers. The chief business of plaintiff was to brew and bottle beer for sale in Kansas, Oklahoma and Texas, and it appears that the demand for its product exceeded the output of the brewery and bottling works at Weston and compelled plaintiff to arrange for the purchase of bottled beer from another brewery to supplement its own production. Accordingly plaintiff began negotiations on March 6, 1909, for such supply by writing a letter to the Klausman Brewing Company, the trade name of a branch brewery in St. Louis operated by defendant, for quotations ''on bottle beer, pints and quarts in carload lots,'' and stating, in substance, that if satisfactory prices were offered plaintiff would order as needed from 75 to 150 carloads.

Under date of March 8, 1909, defendant answered ''we will supply your wants under the following conditions (quoting prices.) We have no quart bottles, hence no price on same. All goods are sold F. O. B. cars St. Louis. We pay freight on return empties. We allow twenty-five cents per dozen for all bottles our brand returned in good condition, our count. . . . The above prices are for cash to accompany every order which is to include price of beer, cases, casks and bottles. No other allowances whatsoever will be made.''

Plaintiff, on receipt of this letter, wrote defendant to send samples of the beer and asked if a better price could not be made ''on empties'' and casks if it were understood that no empties were to be returned and if

defendant could ship as many as seven carloads of beer each week if such quantity were ordered by plaintiff. Defendant answered that samples would be sent, that no better price could be given and that seven carloads per week could be furnished if ordered.

The next letter of importance was written by defendant March 31 and contained a guarantee "that the price of beer made to you in letter of March 8, 1909, shall remain in force for one year from said date," and the agreement "that we will ship all orders within seven days of receipt of same provided we shall have the required amount of labels and decorated crowns on hand, which are to be furnished by you and paid for by us at the rate of twenty cents per gross."

On the following day, April 1st, plaintiff wrote defendant: "On Mr. Joseph Danciger's return to Kansas City, the directors of The Royal Brewing Co., took. up the matter of buying beer from you. We accept your proposition as embodied in your letter of March 8, 1909, to us, and the guarantee of your manager, William Heil, given to our Mr. Joseph Danciger on March 31, 1909.

"We hereby agree to buy from you, pursuant to your letter of March 8, 1909, all such beer of the quality and kind mentioned in your letter to us of March 8th, which we shall need to fill our orders, over and above the output of our own brewery for the period of one year from date of your offer of March 8, 1909.

"Although you were unwilling to stipulate in writing as to packing and etc., we assume, of course, that this beer will be pasteurized, securely packed and in every way suitable for shipping."

April 7th, defendant replied: "Yours of the 1st to hand and noted. Our Main Office will not sign a contract, but the conversation had between Mr. Danciger and our Mr. Heil will be carried out. We are now awaiting your orders which will have our prompt

and careful attention. Kindly let us know when we may expect to receive the initial order.''

April 8th plaintiff answered: ''Your recent letter has been received, and while we cannot say definitely at the present time when we can give you the initial order, we believe it will be in the near future, and from the present outlook, we think we can use quite a number of cars.''

The reference in plaintiff's letter of April 1st to the guaranty ''given to our Mr. Joseph Danciger on March 31, 1909'' was to the guaranty stated in defendant's letter of the latter date. Point is made by counsel for defendant that this correspondence did not constitute a binding contract between the parties for the reason that defendant's letter of March 8th which contained its offer was not unconditionally accepted in plaintiff's letter of April 1st. But that position is not tenable since the subsequent letters of defendant dated April 7th and of plaintiff dated April 8th show conclusively that the minds of the parties did meet in mutual agreement. A contract thereby was created by the terms of which plaintiff agreed to order all the beer it would need in excess of its own production, and defendant agreed to fill all such orders on the terms stated in defendant's letter of March 8th, as modified in the subsequent correspondence. Under these terms defendant agreed to pay plaintiff twenty-five cents per dozen for all empty bottles returned by plaintiff which the latter received from defendant. We agree with defendant that ''to create a contract by offer and acceptance the acceptance must be unequivocal, unconditional and in exact accordance with the offer. It must not vary from the offer either by way of omission, addition, or alteration. The assent must be absolute and final.'' [Scott v. Davis, 140 Mo. 213; Gaus v. Chicago Lumber Co., 115 Mo. App. 119; Batavia v. Railroad, 126 Mo. App. 13; Sarran v. Richards, 151 Mo. App. 656.]

If the negotiations between the parties had ended with plaintiff's letter of April 1, their status would have been that of a conditional acceptance of an offer of sale and, therefore, under the rule above stated, no contract of sale would have been established for the plain reason that the minds of the parties to the negotiations did not meet in mutual agreement, but where, as in the instant case, the offerer signifies his approval of the new conditions stated in the acceptance, there is a meeting of minds, and a binding contract thereby is created.

The controversy which arose between the parties and culminated in this action relates to defendant's agreement to pay twenty-five cents per dozen for all empty bottles returned by plaintiff. Defendant contends that since the contract imposed no reciprocal obligation on the part of plaintiff to return any such bottles, this stipulation should be treated as unilateral and, therefore, nonenforceable. A contract is lacking in mutuality and is unilateral when it consists of "a promise not in consideration of another promise." [Iron & Rail Co. v. Railroad, 148 Mo. App. 173.]

"To make a contract unilateral and therefore void, it is essential that there should be no mutuality of obligation, that only one party thereto should be bound thereby." [LaClede Construction Co. v. Tudor Iron Works, 169 Mo. 137; Eaton v. Coal Co., 125 Mo. App. 194.]

Defendant promised to deliver to plaintiff beer and bottles containing beer at a certain price and to take back at a stated price all such bottles plaintiff might choose to return. Plaintiff, in turn, promised to pay the price charged for both beer and bottles on condition that defendant would take back at a stated price the empty bottles plaintiff might choose to return. The consideration of this promise of defendant was the promise of plaintiff to buy all the beer and the bottles containing it which the business of plaintiff would re-

quire during the succeeding year. There was no lack of consideration for such promise of defendant but it was supported by a very valuable reciprocal consideration. There is no merit in the argument that any part of the contract was lacking in mutuality.

Between May 22d and July 23, 1909, defendant shipped thirty-eight cars of beer under this contract to plaintiff at Kansas City. On May 19th the secretary of plaintiff called at the office of defendant at St. Louis and, so he states, entered into an oral agreement with defendant's manager for a modification or addition to the stipulation relating to empty bottles to the effect that, without altering the obligation of defendant to accept the return of all such bottles, plaintiff might elect to return, defendant would allow plaintiff a rebate of the amount of the freight charges it would save on bottles shipped to plaintiff but not afterwards returned. Defendant puts an entirely different face on this agreement, but the evidence of plaintiff on that issue is substantial and the judgment for plaintiff settled all disputes over matters of fact in its favor.

Defendant accepted two carloads of empty bottles returned by plaintiff and paid the agreed price, but thereafter refused to accept any more and insisted upon plaintiff keeping all the bottles and being allowed the freight rebate. Plaintiff continued to order shipments of beer after defendant took this position and it is claimed that in doing so it acquiesced in defendant's interpretation of the contract, although it constantly protested against such interpretation and did not cease to demand that defendant allow bottles to be returned.

In accepting a partial performance of a contract by the vendor, the vendee does not waive his right to stand on his contract and to recover the damages he sustains in consequence of its partial nonperformance.

When the controversy culminated in the severance of all business relations between the parties, plaintiff had received about 40,000 dozens of bottles from de-

fendant which had not been returned. Plaintiff had sold these bottles and the beer they contained to customers to whom it had allowed the privilege of returning the bottles when empty. At the same time, plaintiff was shipping out its own bottled beer with the same privilege to customers. Many of the bottles used by plaintiff were indistinguishable from those received from defendant and when empty bottles were returned it was impossible in some instances for plaintiff to tell whether or not they had been originally received from defendant. Some of the bottles sent out by plaintiff were not returned, being broken or wasted by the customers, but the evidence shows and the amount of the judgment indicates the court found as a fact that as a rule seventy per cent of the bottles thus shipped out were returned.

The contract does not allow plaintiff to recover for any empty bottles it did not receive from defendant, but we think the proof was sufficiently definite and certain to warrant the finding of the court that seventy per cent of the bottles shipped by defendant had been returned by plaintiff's customers and were on hand at the time of the close of the business relationship of the parties.

At the time defendant refused the demand of plaintiff that it be allowed to return these bottles and thereby breached the contract, the market value of such bottles at Kansas City was fourteen or fifteen cents per dozen. Plaintiff sold them to the ''Schiller Brothers'' for sixteen cents per dozen. We agree with defendant that under the circumstances disclosed no sale, in fact, was made, but we do not perceive how any benefit can accrue to defendant from this act of dissimulation. Defendant's breach of contract entitled plaintiff to recover the difference between the contract price and the market value of the bottles at Kansas City at the time of the breach. If plaintiff had done openly what it did under cover, i. e., kept the bottles and used them at its own bottling works, it still would be entitled to dam-

ages in the amount of the difference between the contract and market values of the bottles. It is not to be supposed that plaintiff could have sold them at more than the market price and defendant was not injured if plaintiff chose to keep them at that price.

Plaintiff was not required to sell the bottles at public or private sale. Among the options a vendor of personal property has when the vendee breaches the contract by refusing to accept a delivery of the property is that of treating the sale as ended by the buyer's default and the property as his (the vendor's) and to recover the actual loss sustained which is ordinarily the difference between the agreed price and the market price. [Range Co. v. Mercantile Co., 120 Mo. App. l. c. 447; Koenig v. Manufacturing Co., 155 Mo. App. 685.]

Point is made that plaintiff was not damaged because it received payment for the bottles from its customers, but this is an erroneous view. If customers, after buying and paying for bottles, chose to return them as a gift to plaintiff, that was their business. Regardless of the terms on which it secured a return of the bottles, plaintiff became the owner of them upon their return and defendant had bound itself to purchase all such bottles at twenty-five cents per dozen. A party to a contract is entitled to the bargain it affords him and the profit plaintiff may have made from dealings with its customers was no concern of defendant.

There is no error in the record and the judgment is for the right party.

Affirmed. All concur.