EVANS *et al.* v. WESTERN BRASS MANUFACTURING
COMPANY, *Appellant.*

### Division One, December 11, 1893.

1. **Parol Evidence:** WRITTEN CONTRACT, CONSTRUCTION OF.  Parol
evidence, as a general rule, is not admissible to contradict, add to.
or vary a written contract, and it is the duty of the court to construe.
written instruments.

2. ———: ———: USAGE.  Proof of usage is often admitted to interpret.
the meaning of written contracts and especially mercantile ones.

3. **Written Contract:** SALE: USAGE: PAROL EVIDENCE.  In an action  ·
on an account for marble slabs shipped on the written order of defend-
ant, to be of a specified thickness, plaintiff may show that in the.
marble trade such an order means slabs of the stated thickness as.
they come from the saw and not when finished for use.

Evans v. The Western Brass Mfg. Co.

4. ——: ——: COMPLIANCE WITH ORDER. Where an order for a
marble structure directed the bases to be made of American or
Georgian or a cheap grade of Italian marble and the manufacturer
used Vermont marble, the purchaser cannot refuse to pay therefor on
the ground that it was not suitable for the purpose.

5. **Open Account:** INTEREST. Where in a suit on an open account
there is no evidence of any demand, interest does not begin to run
until the commencement of the suit.

*Appeal from St. Louis City Circuit Court.*—HON.
DANIEL DILLON, Judge.

AFFIRMED.

*Lubke & Muench* for appellant.

(1) The trial court erred in admitting, against
defendant's objections, the testimony that the marble
trade would understand defendant's order to mean that
the pieces were not to be of the required thickness
when polished, that the plaintiffs so understood the
order, and that plaintiffs were under no obligations to
fill any more of the order than they saw fit. Parol
evidence is not admissible to prove how a written con-
tract or instrument was understood by one of the
parties in an action upon it at law where no fraud is
alleged or shown, citing *Bunce v. Beck*, 43 Mo. 266;
*Bigelow v. Collamore*, 5 Cush. 266; *Harper v. Gilbert*,
5 Cush. 417; *Gould v. Norfolk*, 9 Cush. 338. The con-
struction of a written instrument whose terms are not
ambiguous is for the court unaided by expert testi-
mony. In such cases the expert testimony is a mere
series of contradictory criticisms on the interpretation
of language, and is altogether valueless. *Mathews v.
Danahy*, 26 Mo. App. 660. Evidence of a prior course
of dealing between the parties is not admissible to
supply interpretation of a contract plain in its terms.
*Conrad v. Fisher*, 37 Mo. App. 352. (2) The order

called for marble ready to "go in at the proper places," and required the slabs, partitions, backs and bases to be of certain thickness. There was no ambiguity in this language. The court therefore erred in refusing refusing defendant's fourth instruction which declared that a failure by plaintiff to furnish marbles ready for use and of the specified thickness was a breach of plaintiff's contract, and the court erred in awarding plaintiff judgment for the full amount claimed, regardless of defendant's refusal to accept certain of the slabs, partitions and bases, and regardless of the testimony showing expense incurred by defendant because of this breach of plaintiff's contract. *Cockrill v. Kirkpatrick*, 9 Mo. 697; *Bunce v. Beck*, 43 Mo. 266; *Murdock v. Ganahl*, 47 Mo. 135; *State to use v. Lefaivre*, 53 Mo. 470; *Buress v. Blair*, 61 Mo. 133; *Fruin v. Railroad*, 89 Mo. 397. (3) The defendant's order called for American or Georgia marble suitable for bases. And defendant having shown by evidence that the Rutland, Vermont, marble on account of its porosity was not suitable for this purpose, the trial court erred in refusing defendant's fourth instruction upon that branch of the case and erred in finding against defendant the full amount of plaintiff's invoice prices for the Vermont marble. *County v. Wood*, 84 Mo. 489. (4) The trial court should have sustained defendant's motion for a new trial for that the judgment is excessive.

*George R. Lockwood* for respondents.

(1) The court did not err in admitting the testimony objected to by defendant, and which tended to establish the trade understanding of specifications as to thickness of marble. Greenleaf on Evidence [13 Ed.], secs. 278, 280, 287, 292; *Fruin v. Railroad*, 89 Mo. 397; *Singleton v. Ins. Co.*, 66 Mo. 63; *Blair v. Cosby*, 37 Mo.

313; *Soutier v. Kellerman*, 18 Mo. 509; *Long Bros. v. J. K. Armsby Co.*, 43 Mo. App. 253; *Connable v. Clark*, 26 Mo. App. 162.   (2)   The court did not err in refusing the fourth instruction asked by defendant.   (3) If the court concludes that the clerk erred in calculating interest and consequently that the finding and judgment of the trial court is for more than it should be, this court may enter such judgment as the trial court should have entered or respondents will, on the suggestion of the court, enter a formal *remittitur* of the excessive interest.   The error complained of certainly does not so far affect the merits of the action as to justify a reversal of the case.   Revised Statutes, 1889, secs. 2303, 2304; *Greer v. St. Louis*, 106 Mo. 454; *Land Co. v. Hays*, 105 Mo. 143; *Kenny v. Railroad*, 105 Mo. 270; *Mellor v. Railroad*, 105 Mo. 435; *Smith v. Railroad*, 92 Mo. 359.

BLACK, P. J.—The plaintiffs are partners owning and operating marble mills at Baltimore, Maryland. The defendant is a corporation located at St. Louis, in this state, and engaged in the business of furnishing plumbers' supplies.   The plaintiff brought this suit to recover a balance due upon an open account.   A large part of the account is by defendant conceded to be correct.   The contest arises out of three shipments made by the plaintiff to the Hussy-Day Company, under a letter from the defendant to the plaintiffs, dated the twenty-third of February, 1889.

The following are the material portions of that letter:

"We have forwarded you a diagram by mail to-day for a lot of marble work.   Each slab is to be numbered, both backs and slabs, so that they will go in at the proper place.   Ship direct to Omaha, Nebraska. You will notice each slab is numbered, and the plan

shows whether it is on back or back and one end or back and two ends. Italian marble to be one and one-quarter inch, partitions and backs of urinals to be seven-eighths of an inch, and the bases two inches thick. These bases call for American or Georgia marble. A cheap grade of Italian marble will do just as well, if you have not got either of the above, only we have got to have that grade of marble, in order to meet the price we have bid on."

It appears that the slabs and other pieces, when polished and shipped to the Hussy-Day company, were not of the thickness specified in the letter. But it is stated in the bill of exceptions that the plaintiff produced evidence tending to show that the marble pieces, when sawed, and before polished, were of the specified thickness; and that in the trade a specified thickness means the thickness of the slabs as sawed and before polished. On this point defendant produced evidence tending to show that there was no understanding in the trade that an order for marble of a specified thickness, prepared for immediate use, means the thickness when sawed into slabs and before polished.

It is also stated in the bill of exceptions that the bases for urinals were made of Rutland, Vermont, marble; that "Rutland, Vermont" marble and American marble mean the same thing; that plaintiff produced evidence tending to show that Vermont marble is suitable for such purposes. On the other hand, the defendant produced evidence tending to show that Rutland, Vermont, marble is unfit for urinal bases, because it is too porous.

It appears the Hussy-Day Company refused to accept the marble pieces now in question, and left them with the carrier. The defendant was required to supply other pieces for those rejected. There is no evidence as to the terms of the contract between the

defendant and the Hussy-Day Company.

The defendant objected to some, but not all, of the evidence produced by the plaintiffs tending to show that an order for polished marble of a specified thickness means in the trade the thickness when sawed. The defendant also asked the court to instruct that the plaintiffs were, under the letter, bound to furnish marble pieces of the thickness specified in the letter when prepared and finished for use, and that defendant had a right to reject the pieces not of such thickness whenever polished. The court refused this instruction. As the refusal of the instruction and the objection to the evidence present the same question, they may be considered together.

The general rule undoubtedly is, that parol evidence cannot be admitted to contradict, add to, or vary a written contract; and it is the duty of the court to construe the writing. *Bunce, Adm'r, v. Beck, Ex'r*, 43 Mo. 266; *Black River Lumber Co. v. Warner*, 93 Mo. 374; *State ex rel. Yeoman v. Hosham*, 98 Mo. 358. But it is equally well settled that proof of usage is often admitted to interpret the meaning of the language used; for under many circumstances the parties may be supposed to contract with reference to a usage or custom, as they are presumed to use words in their ordinary signification. 1 Greenleaf on Evidence, sec. 292. "The courts," says Starkie, "have long allowed mercantile instruments to be expounded according to the usage and custom of merchants, who have a style and language peculiar to themselves, of which usage and custom are the legitimate interpreters." Starkie on Evidence [10 Ed.], p. 701. Hence it has been held by this court that it may be shown by way of a general and well established custom that two packs of shingles of a certain size constitute a thousand. *Soutier v. Kellerman*, 18 Mo. 509. See, also, *Blair v. Corby*, 37 Mo.

314; *Kimball v. Brawner*, 47 Mo. 398; *Fruin v. Railroad*, 89 Mo. 402; *Wolff v. Campbell*, 110 Mo. 119; *Robinson v. United States*, 13 Wall. 365.   It is true, as some of the cases just cited show, that usage cannot be permitted to control the terms of a special contract by introducing something which is repugnant to or inconsistent with the contract.   But it does not follow that evidence of usage can only be received where the words of the contract are ambiguous.   Such evidence is often received to show that words are used in a sense different from their ordinary meaning, as in *Soutier v. Kellerman, supra.*   Such evidence is received on the theory that the parties knew of the usage or custom and contracted in reference to it, and in such cases the evidence does not add to or contradict the language used, but simply interprets and explains its meaning.

It was therefore competent for the plaintiff to show that in the marble trade an order for slabs of a specified thickness, prepared for use, means slabs of a stated thickness as they come from the saw.   And the evidence being admissible, there was no error in refusing to instruct it out of the case, for that is what the refused instruction seeks to do.   A custom or usage, to be of any avail, ought to be shown to be well established; but the defendant did not seek to have this matter explained by instructions.   We do not know what the evidence of the alleged custom and usage was, for very little of it is preserved in the bill of exceptions. Though such evidence ought to be admitted with care, still we cannot say the court erred in admitting the evidence or in refusing the instruction.

2. The next complaint is that the court erred in refusing a part of the instruction before mentioned, which is to this effect: If the plaintiff shipped bases made from Rutland, Vermont, marble, and this marble was not suitable for urinals, the defendant had the

right to reject such marbles.

As the instruction was erroneous, for the reasons before stated, there was no error in refusing it as a. whole. But we think the part just stated was properly refused, even if it stood as a separate instruction. According to the letter constituting the contract, the bases were to be of American or Georgia marble, or of a cheap grade of Italian marble. It seems to be conceded that American marble means and includes Vermont, but not Georgia marble. Now, the complaint is. not that this Vermont marble furnished by the plaintiffs was of an inferior quality, but the contention is. that the instruction should have been given because there is evidence tending to show that Vermont marble is not suitable for urinal bases. In other words the claim is that plaintiffs should have made the bases of Georgia or Italian marble, though the contract gave them the right to use Vermont marble for the bases. This is not, and cannot be, the law. The plaintiffs had the right to use either of the three kinds of material. This is too clear to call for further argument.

3. Finally, it is insisted that the judgment is excessive. The plaintiff sued for $2,607.50, that being the balance due as per account filed with the petition. The court, by an instruction given at the request of the defendant, excluded $94 charged for knees, bolts and brass legs, leaving $2,513.50. As the suit is based upon an open account and there is no evidence of any demand of payment, interest did not begin to accrue until the commencement of the suit. *Southgate v. Railroad*, 61 Mo. 89; *Petty v. Douglass*, 76 Mo. 70. The interest from the commencement of suit to date of judgment amounts to $174.66. The judgment should therefore have been for $2,688.16, whereas it was for $2,757.10, being an excess of $68.94. With this result, the plaintiffs ask leave to remit the excess in this court,

which request is granted; and the judgment is affirmed for the residue. The respondents will be charged with the costs of this appeal. All concur.