THE STATE ex rel. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY et al., Appellants, v. PUBLIC SERVICE COMMISSION OF MISSOURI and BOARD OF TRADE OF KANSAS CITY.

In Banc, November 11, 1916.

1. **INTERSTATE SHIPMENT: Elements: Exceptions.** Whether the movement of a commodity is intrastate or interstate commerce is to be determined in the majority of cases from certain elemental facts. These are the intention of the shipper as indicated by the bill of lading, the continuity of the movement and the delivery of the commodity under the shipment contract. When some of these elements are absent, other facts, due to the nature of the particular case, and of sufficient probative force to determine the character of the shipment, are present.

2. **INTERSTATE SHIPMENT: Initial Purpose.** An interstate shipment exists when a commodity has been turned over by a shipper

to a common carrier to be transported from one State to another under a contract of shipment—the definite character of the shipment being fixed when the movement of the commodity has commenced for the purpose of transportation.

3. ———: **Intention: Evidenced by Contract.** Intention, while not in some cases controlling, is important in determining the character of the shipment.

> *Held*, by GRAVES, J., concurring, that the intention of the shipper governs the character of the shipment (as to whether interstate or intrastate); but when that intention has been clearly evidenced by a written contract of carriage to which both parties have subscribed, the carrier is estopped by the terms of the contract from asserting that the intention was for an interstate shipment, where the contract by its terms calls only for an intrastate one. In such case the intention is to be gathered from the instrument.

4. ———: ———: **Contract: Reconsignment.** Where the contracts are for shipments from points in Missouri to grain dealers in Kansas City, Missouri, and the commodity is there delivered to and sold by the consignees, who are grain dealers on the floor of the Board of Trade, the delivery to them completes the contract between the shipper and carrier, and the whole transaction having been confined to Missouri the shipment is intrastate, although the grain at the time of the sale has not been unloaded and remains in cars on the hold tracks until it is sold by the consignees to other purchasers.

> *Held*, by REVELLE, J., concurring, that shipments consigned from one point in this State to another point in this State are intrastate shipments, unless it is the intention of the shipper to reconsign the same and extend it beyond the State line, or unless the shipment is of such a character and made under such circumstances that it necessarily must, regardless of the shipper's intention, extend beyond the line.

5. ———: ———: **Contract as Determinable.** While the essential character of the commerce is influenced by the billing or form of contract, it is not to be controlled by it except when taken in connection with the other essentials, namely, the continuous movement from the place of shipment to the final destination named in the contract, and the delivery of the commodity at such place to the consignee.

> *Held*, by GRAVES, J., concurring, that the intention of the shipper determines whether the shipment is intrastate or interstate and the intention of the parties cannot and should not be determined otherwise than by their solemn written effreightment contract.

> *Held*, by BOND, J., concurring, that the essential character of commerce is determined by (1) the intention of the shipper and (2)

the nature and object of the shipment, which may be shown from the facts and circumstances of the particular case, and are not conclusively established by the terms of the bill of lading, which can never alter the real nature of the shipment, but are only evidentiary, in connection with other facts and circumstances, of the purpose and destination of the shipment.

6. ———: **New Movement Under New Contract.** If, after the grain has been transported from initial points of shipment in Missouri to Kansas City, Missouri, and there delivered to consignees who sell it in carload lots to other purchasers while it still remains unloaded on the hold tracks, it is moved under the purchaser's direction, the carrier commences the performance of a new contract separate and independent of the original one, and if thereunder the shipment be across the State line it becomes interstate in its character upon the beginning of the new movement.

7. ———: **Usage and Custom.** Usage and custom cannot be invoked to destroy, modify or contradict what is otherwise manifest, or to make a contract where there is none. They cannot be invoked to turn an intrastate shipment into an interstate one.

8. ———: **Placing Cars on Holding Track Over State Line.** Where the bill of lading or contract between the shipper from a Missouri point and the carrier names Kansas City, Missouri, as the final destination of the grain, the carrier cannot, by placing the unloaded cars after they have reached this destination, for its own convenience, on its hold tracks in the State of Kansas, during the time intervening between their arrival and the sale of the grain by the consignee, change the character of the intrastate shipment into an interstate one.

Appeal from Jackson Circuit Court.—*Hon. Harris A. Robinson*, Judge.

AFFIRMED.

*O. W. Dynes, S. W. Moore, J. M. Souby, James F. Green, Cowherd, Ingraham, Durham & Morse, N. S. Brown* and *Scarritt, Scarritt, Jones & Miller* for appellants.

(1) Custom and usage or usual course of business between shippers and railroads in handling any commodity is everywhere recognized as all important in determin-

269 Mo. 5

ing the rights of shippers and the rights and liabilities of railroads. Examine almost any authority on railroads, and upon almost every page the statement will be found that usage and course of business is a prime essential in arriving at the rights and liabilities of the railroads. 6 Cyc. 418, 428, 457, 465; The Richmond, 1 Biss. (U. S.) 49; Staroske v. Pub. Co., 235 Mo. 75; Cahn v. Railroad, 71 Ill. 96. Grain is different from every other commodity and must be handled in a amnner peculiar to itself. Therefore, to refuse to consider the established custom or usage in the transportation and delivery of grain by railroads at any given point is to shut one's eyes to the only way, in the absence of statutes, of determining whether or not a carrier has performed its duty to a shipper of grain. (2) By the words "Kansas City, Missouri," in a bill of lading is not meant the corporate limits of Kansas City, Missouri, but rather the "switching limits of Kansas City." It is erroneous to conclude that the words "Kansas City, Missouri," can have only one signification wherever found and in whatever connection used and, therefore, not subject to interpretation. The words unquestionably have different. significations in different connections. The boundary between Kansas City, Missouri, and Kansas City, Kansas, is purely an imaginary line, and it is entirely a political division and not a business division. No distinction whatever is known among shippers or railroads between Kansas City, Missouri, and Kansas City, Kansas. Devato v. Plumbago, 20 Fed. 510; Milling Co. v. Railroad, 152 Wis. 528. To construe the words "Kansas City, Missouri," in the bill of lading, "does not change a contract, vary it in any way; it merely gets out of it the sense the parties intended to put into it" Reiss v. Railroad, 98 Fed. 533. We do not rely solely on usage and custom to define the words "Kansas City, Missouri," as used to designate the terminal in a grain bill of lading. The tariffs published by the railroads distinctly set forth, as being within such terminal, Argentine, Kansas City, Rosedale, etc., in Kansas. "So far as grain traffic is concerned, these substations are subdivisions;

are all within the Kansas City switching limits and are a part of the market at Kansas City.'' A part of the State of Kansas being within the limits of ''Kansas City, Missouri,'' as that designation is known in shipping and railroading, and as explained in the published tariffs of the railroads, it is distinctly erroneous to conclude that the intention or contract of the shipper, as evidenced by the bill of lading, was that the grain in question should be moved only in Missouri. (3) There is no delivery at the ''hold'' tracks. Unquestionably it is the duty and contract of the common carrier not only to transport commodities from one point to another, but it has the further duty to make delivery at the terminal point. Until delivery is made, the contract, evidenced by the bill of lading, is not completed. There was no ''delivery to the consignee of the shipper on the 'hold' track of the carrier.'' Delivery is generally a matter of cold, actual, physical fact, rather than a matter of argument or speculation. Whether or not a carrier has made delivery of a commodity at a proper place, so as to complete its contract, frequently, if not generally, depends upon the usage or practice in the particular locality, as to the delivery of such commodity. Whether considered from the standpoint of cold, actual, physical fact, or from the standpoint of usage and practice, the conclusion must be against the finding that there is ever a delivery of grain on the ''hold'' track of a railroad, in Kansas City. There is no facility for unloading grain at the ''hold'' track. It is not reachable even by wagons. During the whole time that a car of grain stands upon the ''hold'' track, it is in the custody of the carrier and the carrier is responsible for the same, as carrier. If the grain should be burned or destroyed while on the ''hold'' track, there can be no question but what the railroad company would be liable as insurer. Railroad v. Nash, 43 Ind. 423; Milling Co. v. Railroad, 152 Wis. 528; Lewis v. Sharvey, 58 Minn. 464; Interstate Com. Comm. v. Railway, 234 U. S. 294; 6 Cyc. 467; Railroad v. Murray, 72 Ill. 128; Cahn v. Railroad, 71 Ill. 96; Railroad v. Nash, 43 Ind. 423; The Richmond,

1 Biss. (U. S.) 49; Bartlett v. Steamboat, 32 Mo. 259; The Boston, 1 Lowell (U. S.), 464. (4) The order for delivery is not the making of a new contract or the starting of a new shipment. There is no consideration moving to the railroad company for any new contract for this movement from the ''hold'' track to the point of delivery. The order giving the point of unloading is not the giving of a new destination, but is only the designation of the point of delivery, within the original destination. State ex rel. v. Railroad, 176 Mo. 687; Milling Co. v. Railroad, 152 Wis. 528; Badenoch & Co. v. Railroad, 22 I. C. C. 36; Fuel Co. v. Railroad, 15 I. C. C. 443. Where, as here, a commodity has moved from a seller in Missouri to a buyer in Kansas in the same car in which it was first loaded, and the car, from loading to unloading, has remained in the custody of the carrier and has continued under the control and direction of the original shipper, or his agent, it would certainly seem a simple fact, too plain for argument, that the commodity had moved from the seller in Missouri to the buyer in Kansas in interstate commerce.

*Wm. G. Busby* and *Atwood & Hill* for respondents.

(1) We especially call the court's attention to the following cases which are undoubtedly controlling and decisive of this case: Hay & Grain Co. v. Railroad, 2 I. C. C. 82; Larabee v. Railroad, 74 Kan. 808; Railroad v. Larabee, 211 U. S. 612; Coe v. Errol, 116 U. S. 517; Railroad v. Texas, 204 U. S. 403; Railroad v. Iowa, 233 U. S. 343; Kolkmeyer v. Railroad, 182 S. W. 794. (2) A shipment takes the character of interstate commerce only when it is actually started in the movement to another State and becomes interstate commerce only when such movement begins. Larabee v. Railroad, 74 Kan. 818; Shipping Assn. v. Railroad, 90 Kan. 264; Railroad v. Railroad Comm., 173 Ind. 469; Smith & Son v. Railroad, 177 Mo. App. 270. (3) The movement of the grain from the point of origin in this State to point of final destination in the State of Kansas is not a continuous movement between the States. Railroad v. Iowa, 233

U. S. 343; Railroad v. Texas, 204 U. S. 403. The contract between the railroad company and the shipper of grain was for the carriage of the grain from a point in this State to Kansas City, Mo. Custom cannot change the contract to one requiring the additional movement of the grain from Kansas City, Mo., to Kansas. Bank v. Burkhardt, 100 U. S. 692; Tilley v. Cook County, 103 U. S. 162. (4) The consignee accepted delivery of the grain upon the hold track at Kansas City, Missouri, and the further movement of the grain to Kansas was an interstate movement beginning at the hold track and not at the point of origin of the shipment. (a) The consignee may receive goods addressed to him in the hands of the carrier at any place—original destination or intermediate point—and such acceptance operates as a discharge of the common carrier liability of the railroad to the consignor—the contract of carriage being thus completed. Hay & Grain Co. v. Railroad, 11 I. C. C. 82; Sweet v. Barney, 23 N. Y. 338; Lewis v. Railroad, 11 Met. (52 Mass.) 509; Railroad v. Bartlett, 7 H. & N. 401; Freeman v. Railroad, 118 Mo. App. 534; Grain Co. v. Railroad, 134 Mo. App. 684; Smith v. Railroad, 177 Mo. App. 270. (5) Diversion, reconsignment and transit privileges are of importance in the proper handling of transportation, but these privileges are often abused and at times at certain points are almost impossible of application, due to conditions over which the carriers have no control, and for years past the majority of shipments in and out of Kansas City have moved upon reshipping rates, in lieu of transit rates. Board of Trade v. Railroad, 29 I. C. C. 376; Morgan v. M., K. & T., 12 I. C. C. 525; Freight Bureau v. Railroad, 14 I. C. C. 150.

WALKER, J.—This is an appeal from a judgment of the circuit court of Jackson County under the provisions of section 114, Laws 1913, page 644.

The Board of Trade of Kansas City, Missouri, filed a complaint before the Public Service Commission, alleging that the railroad companies named above as appellants were charging interstate instead of intrastate rates

for shipments of grain from points on their respective lines within this State to Kansas City, Missouri, in violation of the State maximum freight rates. [Secs. 3240, 3241, R. S. 1909.]

Upon a hearing a finding was made by the commission sustaining the contention of complainants that the said shipments were intrastate instead of interstate, and the railroad companies were ordered to desist from charging higher rates for such shipments than those prescribed by the State statutes.

A review of the findings and order of the commission, under section 111, Laws 1913, page 644, was held before the circuit court of Jackson County on the application of said railroad companies, and the action of the commission was in all things affirmed. The correctness of the judgment thus rendered is the matter for our consideration.

The grain involved in this controversy is such as is shipped in car-load lots from points within this State to Kansas City, Missouri, and is subsequently sold and delivered within the switching limits of said city. The shipments are made under bills of lading to grain dealers in Kansas City, Missouri, or to bills of lading, such as show consignments to the orders of shippers, but bear notations to carrier's agents at destination to notify parties named of arrival of shipments. The names of parties to be notified are those of grain dealers. Upon the arrival of grain at its designation it is placed by the carriers on their hold tracks for inspection, who at once notify the consignees or dealers named in the bills of lading. The hold tracks are those used by carriers upon which to set or place upon their arrival at their destination, cars of grain pending the nspection and sale of same. Some of these hold tracks are in the State of Kansas. When the grain in such cars has been inspected, whether in Missouri or Kansas, a sample is taken of that contained in each car, accompanied by a ticket describing the car and giving the grade, weight and quality of the grain, which is signed by the inspector. This sample is delivered to a grain

dealer, who exhibits it with the inspection ticket on the floor of the Board of Trade, and upon such sample the carload of grain is sold. The terms of the sale are placed on the back of the inspection ticket, which is delivered to the buyer and constitutes the written evidence of his purchase. When the grain is sold a written order is made by the dealer directing the carrier where the car shall be delivered; this order is attached to the bill of lading by the dealer and delivered to the agent of the carrier. Upon this order the car is taken from the hold tracks and delivered to the purchaser.

If the place of the delivery of the grain after it is sold is on the line of the carrier it is delivered to the buyer without additional charge, but if it is transferred to another line a reconsignment charge is made for such service by the original carrier and a switching charge is made by the connecting carrier. After delivery the buyer settles with the grain dealer by paying for the grain according to the terms of purchase, and the dealer, as agent for the shipper, pays the carrier the freight charges, including (if the car is delivered by a connecting carrier) a reconsignment and switching charge. When switching charges are due they are paid by the buyer in his settlement with the dealer, and the latter pays same to the carrier for account of the connecting carrier.

An intrastate movement of a commodity is usually to be determined from certain elemental facts common in the majority of cases to all shipments. These are the intention of the shipper as indicated by the bill of lading; the continuity of the movement of the commodity; and its delivery under the contract of shipment. There are adjudicated cases from which some of these are absent. When this occurs other facts are found to be present, due to the nature of the particular case, of sufficient probative force to determine the nature of the shipment.

Applying the elementals noted, we find that an interstate shipment exists when a commodity has been turned over by a shipper to a common carrier to be transported from one State to another under a contract of shipment,

the definite character of such shipment being fixed when the movement of the commodity has commenced for the purpose of transportation.

If, however, the commodity has been committed to the carrier by the shipper for transportation from one point to another in the same State, the character of the commerce is intrastate in its nature, subject to certain limitations not in this case, but which we will notice later.

These definitions are sufficient to distinguish generally between the two classes of commerce—the one regulated by Federal and the other by State law. Thus regulated we look to the rulings of the United States Supreme Court and those of our own court to aid in the construction of these statutes and thus determine the classification of a shipment in any given case.

Here it is admitted that the contracts of shipment were from points in the State to Kansas City, Missouri. There is an absence of intention, either express or implied, on the part of shippers to ship the grain beyond Kansas City, Missouri. Intention, while it may not in some instances be controlling, is in these cases important. The owners of the grain, in the exercise of a proper dominion over their property, ship it to said city for sale. It is there delivered to and sold by a consignee of the shipper on the floor of the Board of Trade. The delivery to the consignee completes the contract between the shipper and the carrier (Adams Express Co. v. Kentucky, 214 U. S. l. c. 223; L. & N. R. R. Co. v. Cook Brewing Co., 223 U. S. l. c. 82; Kirkmeyer v. Kansas, 236 U. S. l. c. 572), and the transaction having been confined to this State, no question can arise as to the nature of the shipment, viz., that it is intrastate. The following concurrent conditions confirm this conclusion: (1) The intention of the parties evidenced by the bill of lading naming Kansas City, Missouri, as the point of final destination; (2) the continuous movement of the grain to such point; and (3) its delivery there to the consignee of the shipper on the hold tracks of the carrier. The essential character of the commerce is properly determinable from the presence of these requisites, and while

influenced by the billing or form of contract, the character of the shipment is not to be controlled by it except when taken in connection with the other essentials in the case. Upon the sale of the grain its further movement is subject to the direction of the purchaser. He may, dependent upon the location of his business or his purpose in the disposal of the grain, direct its shipment to a point outside of the state, but until he so directs the character of the commodity as an article of commerce continues as under the original shipment.

When, however, the movement of the grain begins under the owner's direction, the carrier commences the performance of a new contract separate from and independent of the original under which it had transported the grain from the initial point of shipment to Kansas City, Missouri. [Railroad v. Texas, 204 U. S. 403; Chi. M. & St. P. R. R. Co. v. Iowa, 233 U. S. 1. c. 334.] If the shipment be across the State line its character becomes interstate in nature upon the beginning of the movement of the grain under the new contract. Precedents sustaining this conclusion are plentiful. In general terms we find it affirmatively declared in The Daniel Ball, 10 Wall. 565; Coe v. Errol, 116 U. S. 517; La. R. R. Comm. v. Railroad, 229 U. S. 336; Ohio Railroad Comm. v. Worthington, 225 U. S. 101.

It will be found that the requisites we have referred to are not present in all of the cases in which the shipments were held to be interstate in their nature. In each of these cases, however, there are existing facts so clearly defining the intention of the parties as to enable the nature of the transaction to be readily determined without other aid. Take, for example, the case of Southern Pacific Terminal Co. v. Interstate Comm. Commission, 219 U. S. 498. In that case, while the billing was local, the commodity shipped, as disclosed by all of the facts, was from its origin intended for export; and everything that was done in regard to same from the beginning down to the loading of the commodity on foreign-bound ships was a part of the contract of carriage and the shipment was therefore held to be interstate in character.

In United States v. Union Stock Yard, 226 U. S. 286, a shipment originated outside of the State of Illinois. Before it was completed it was moved over the rails of the Union Stock Yards to its final destination. The question arose as to whether this last shipment was not intrastate, and it was held not to be, but on the contrary a part of the entire movement from the point of origin.

Another case illustrating the fact that local billing alone will not determine the nature of a shipment is that of La. Railroad Comm. v. Texas & Pacific Ry. Co., 229 U. S. 336. In this case staves and logs were shipped to New Orleans and there loaded on vessels for export. It was held, notwithstanding the billing, that from the beginning there was an evident intention and purpose to ship to foreign countries and that except for the necessary reshipment at New Orleans there was that continuity of movement necessary to characterize the transaction as interstate.

In State ex inf. v. A. T. & S. F. Ry. Co., 176 Mo. 687, a suit was brought by the Attorney-General to oust certain railroads from the exercise of corporate powers for exacting a reconsignment charge for handling certain cars in Kansas City, Missouri. It being shown that the only shipments involved were those originating outside of Missouri, it was held that the charges were not improperly made on the ground that the State has no power or authority to forfeit the right or franchise of a common carrier doing interstate business, or to oust it from the exercise of its right to charge tolls or fees for interstate transportation. That case, therefore, has no application under the facts to the case at bar.

The cases to which we have made particular reference are readily distinguishable from that under review. Each of those discloses marked interstate characteristics not to be found here, and it is only by implication and supplementing a completed contract by invoking custom or usage that any applicable facts can be found giving the transaction here other than an intrastate character. Usage or custom cannot properly be invoked to aid in the contention of the appellants. The purpose of the

contract between the shipper and the carrier is manifest
from its terms.   While general usage may, in a particu-
lar case, be shown to remove ambiguities and uncertain-
ties, it cannot be employed to destroy, modify or con-
tradict what is otherwise manifest; nor make a contract
where there is none, and hence its application in this case
is unauthorized.   [National Bank v. Burkhardt, 100 U.
S. l. c. 692; Tilley v. Cook County, 103 U. S. l. c. 162.]

Let us suppose an extreme case, however, of which
there are said to be occasional instances, in which the
hold tracks of the carrier are beyond the State line.
Suppose, in a case of this character, the carrier, for its
own convenience after the cars containing the grain have
reached Kansas City, Missouri, places same on a hold
track in the State of Kansas during the time intervening
between the arrival of the cars and the sale of the grain.
Will this fact alone control the character of the ship-
ment?   We think not.   The only written evidence of the
contract between the shipper and the carrier is the bill of
lading.   This defines Kansas City, Missouri, as the final
destination of the property.   No facts in the case author-
ize the conclusion that either the shipper or the carrier
intended otherwise.   The added movement by which the
cars were transferred across the State line and there held
by the carrier was on its own initiative and for its own
advantage.   Aside from the shipper's lack of intention
that this should be done; there is nothing to indicate he
had any knowledge it has been done.   Despite these facts
it is sought to burden him with a greater rate of carriage
than he contracted to pay.   Or, in other words, on ac-
count of the carrier's act alone it is sought to have the
shipment classified as interstate in its character.   The
facts do not warrant it, and well reasoned authorities
correctly construed do not authorize it.

From the foregoing it follows that the judgment of
the circuit court should in all things be affirmed, and it
is so ordered.

All concur: *Graves, Bond* and *Revelle, JJ.,* each in
separate opinions.

GRAVES, J. (concurring).—I concur in the result of the opinion by WALKER, J., and in much that he has said therein. My views, perhaps, go further than do his. [*Vide* dissenting opinion in Deardorff v. C. B. & Q. Ry. Co., 172 S. W. l. c. 336.] The intent of the shipper governs the character of the shipment (as to whether interstate or intrastate) but when that intent has been clearly evinced by a written contract of carriage to which both parties have subscribed, the railroad company, for the purpose of getting a higher rate of carriage, is estopped by the terms of its written contract from saying that the intention was for an interstate shipment, if the contract was one for an intrastate shipment. Where the contract is for an intrastate shipment, the intent must be gathered from the instrument. I am aware that there are cases seemingly to the contrary, but I cannot bring my judgment around to the idea that the intent of the parties as to the character of a given shipment can or should be determined otherwise than by their solemn written agreement as to the carriage. I therefore concur with the result reached, and such portions of the opinion as do not conflict with these views.

BOND, J. (concurring).—I concur in the result of the learned opinion of our Brother WALKER for the following reasons: The essential character of commerce in cases like the present is determined, first, by the intention of the shipper; second, by the nature and object of the shipment. These may be shown from the facts and circumstances of the particular case and are not conclusively established by the terms of the bill of lading, which can never alter the real nature of a shipment and whose language may be explained or overcome by the characterizing elements of the transaction. That the terms of a bill of lading are not conclusive of the nature of the shipment, but only evidentiary in connection with other facts and circumstances bearing on the purpose and destination of the shipment, is now the settled doctrine of the Supreme Court of the United States. [Lusk v. Atkinson, 268 Mo. l. c. 124, and cases cited.]

In the case under review, the record reveals no facts indicating any *intent* on the part of the shipper to send the product beyond the borders of this State, and discloses no knowledge on his part of the delivery of similar shipments beyond the confines of the State. There existed, therefore, no data affording reasonable grounds for an inference on the part of the shipper that his property was to be transported to a point beyond that designated in the bill of lading, nor informing him of the existence of such custom on the part of the carrier.

It follows that the tests determinative of the character of interstate commerce were not met by the facts disclosed in this record. On account of this failure of proof, the Public Service Commission was justified in making the order requiring the carrier to exact only the rates prescribed by the laws of this State for intrastate commerce, and its finding and order should be affirmed.

REVELLE, J. (concurring).—I concur in the affirmance of this judgment, and in the learned opinion of our Brother WALKER. Shipments consigned from one point in this State to another point in this State are intrastate shipments, unless it is the intention of the shipper to reconsign same and extend them beyond the State line; or unless the shipment is of such a character and made under such circumstances that it necessarily must, regardless of the shipper's intentions, extend beyond the line. In either of such cases the shipment is an interstate shipment; but neither of these conditions prevails in the present case.