## WRAY–DICKINSON CO. v. COMMERCIAL CREDIT CO., Inc.

### No. 5912.

Court of Appeal of Louisiana. Second Circuit.

Nov. 3, 1939.

Rehearing Denied Dec. 1, 1939.

L. Percy Garrot, of Shreveport, for appellant.

Coleman & Morgan, of Shreveport, for appellee.

DREW, Judge.

This suit was brought by the Wray-Dickinson Company to recover the sum of $127 from the Commercial Credit Company, Incorporated, and arises out of the repairs done by the Wray-Dickinson Company to a Ford Tudor automobile belonging to Clarence Grigsby. The pertinent facts are as follows:

The automobile in question belonged to Carl and Clyde Brown, who traded it to Rowe and Boyce, of Minden, Louisiana. At the time this car was traded to Rowe and Boyce there was a chattel mortgage against it in favor of the General Motors Acceptance Corporation. Rowe and Boyce were supposed to have paid off this mortgage before reselling the automobile. However, the first mortgage in favor of the General Motors Acceptance Corporation was not paid prior to the time Rowe and Boyce sold the automobile to Clarence Grigsby. When the automobile was sold to Grigsby, Rowe

and Boyce took a note for the unpaid purchase price, secured by a chattel mortgage, and on the same date as the sale negotiated the note and chattel mortgage to the Commercial Credit Company, an automobile finance company operating in the State of Louisiana.

When the Commercial Credit Company, Incorporated, purchased the note and chattel mortgage, it secured a policy of insurance on the automobile with the Home Insurance Company of New York, insuring the car against collision. While the original policy issued to Clarence Grigsby could not be located, its contents have been proven by a duplicate copy being filed in evidence. This policy was issued to Clarence Grigsby and the Commercial Credit Company, the contract of insurance being with both Grigsby and the defendant herein. The policy further provides that in event of loss, the adjustment was to be made with Grigsby, but was to be paid only to the Commercial Credit Company subject to all conditions of the policy and for the account of all interests.

On or about September 30, 1937, Clarence Grigsby was involved in an accident with this automobile. J. H. McLin, an adjuster for the Home Insurance Company, called on Grigsby in his home in Couchwood, Louisiana, and secured his consent to have the automobile moved to the location of plaintiff's garage in the City of Shreveport. The car was brought in to plaintiff's establishment and an estimate submitted. The adjuster then submitted the estimate to Clarence Grigsby and the latter authorized Wray-Dickinson Company to make the repairs to his automobile. The authorization was in writing. Wray-Dickinson had no contract with anyone as to repairs.

Shortly after the repairs were completed, General Motors Acceptance Corporation, who held the first mortgage, learned where the automobile was and sequestered same. Thereafter, the Home Insurance Company, in keeping with the terms of the policy, forwarded a draft in the amount of the estimate of repairs, less the $50 deductible, to the Commercial Credit Company, Incorporated, which Company applied this insurance money on the account of Clarence Grigsby.

Plaintiff demanded of defendant payment of the amount of insurance money it had received, which was refused. This suit followed.

The allegations of plaintiff's petition setting out its claim against defendant are as follows:

"6. Now your petitioner avers that the Commercial Credit Company, Inc., held at the time a note made and executed by Clarence Grigsby, which note was secured by a chattel mortgage covering and affecting the above described automobile; and that the Commercial Credit Company, Inc., is what is known as a finance company, and is engaged in purchasing chattel mortgage notes covering and affecting different kinds of personal property.

"7. That the obligation of the insurance company in this case was to pay for the repairs made on the automobile of Clarence Grigsby, or to pay an amount equal to the damage that had been caused to said automobile; that when an automobile is repaired as the result of the procedure followed in this case, it is the custom and practice for the insurance company which has issued an insurance policy insuring the said automobile against loss or damage resulting through accident to pay to the finance company the insurance money; that it is the custom and practice for the finance company to pay to the one who has repaired the said automobile the amount paid to it by the insurance company, or, occasionally, a check is issued by it payable to the owner of the automobile which has been repaired and to the one who has made the said repairs; and that this custom and practice obtains and is followed whether the insurance policy was taken out by the owner of said automobile, or the holder of chattel mortgage notes, and whether the said policy is in favor of the owner of said automobile or in favor of the holder of chattel mortgage notes covering and affecting said automobile.

"8. That this custom and practice obtains among those engaged in the business of repairing automobiles, finance companies, and insurance companies; that said parties do business in accordance with the same; that the Commercial Credit Company, Inc., was doing business in accordance with said custom and practice at the time that the automobile was repaired and at the time that the hereinafter mentioned insurance money was paid to it; that it knew that said custom and practice existed; that it had consented to it and had acquiesced in and assented to this mode of doing business; and that the above facts were known to your petitioner.

"9.  Now your petitioner avers that after the repairs in question had been made, the Home Insurance Company paid to the Commercial Credit Company, Inc., the sum of $127.00; that is to say, the amount of the repairs made by your petitioner less $50.00, which, according to the policy which had been issued by said Home Insurance Company, could be deducted by said Company from the total amount of the repairs.

"10.  That, under ordinary circumstances, the Commercial Credit Company, Inc., would have paid the above mentioned amount to your petitioner, in accordance with the custom and practice hereinbefore mentioned, or would have issued and delivered a check payable to your petitioner and Clarence Grigsby.

"11.  Your petitioner avers that the Commercial Credit Company, Inc., refuses to pay said sum to your petitioner or to your petitioner and Clarence Grigsby for the following reasons, to-wit:

"12.  That the automobile hereinbefore described was formerly owned by Carl and Clyde Brown, the said automobile having been sold to them by Parker-Buick Pontiac Company; that at the time they executed a note secured by a chattel mortgage covering and affecting said automobile; and that said note was transferred to and came into the hands of the General Motors Acceptance Corporation.

"13.  That thereafter, the said Carl and Clyde Brown transferred said automobile to Rowe & Boyce, Minden, Louisiana; that Rowe & Boyce thereafter sold said automobile to Clarence Grigsby, taking in payment or in part payment, a note secured by a chattel mortgage covering and affecting said automobile; and that this note was transferred to the Commercial Credit Company, Inc., and is still in the hands of said Company.

"14.  That at the time that the Commercial Credit Company, Inc., acquired the above mentioned chattel mortgage note from Rowe & Boyce, it did not know about the existence of the chattel mortgage note held by the General Motors Acceptance Corporation; that after the automobile of Clarence Grigsby had been repaired by your petitioner and was still being held by it, the General Motors Acceptance Corporation foreclosed its mortgage and under its vendor's lien and privilege, sequestered the automobile in question; and that the Commercial Credit Company, Inc., then found out that its mortgage was second in rank to the mortgage of the General Motors Acceptance Corporation.

"15.  That due to the fact that the mortgage of the General Motors Acceptance Corporation comes ahead of the mortgage of the Commercial Credit Company, Inc., it is impossible for the Commercial Credit Company, Inc., to be paid out of the price that the automobile involved in this case will sell for, inasmuch as the said automobile is not worth as much as the aggregate of the note held by the General Motors Acceptance Corporation and the note held by the Commercial Credit Company, Inc.

"16.  That due to the fact that its mortgage is second in rank, the Commercial Credit Company, Inc., has applied toward the payment of its note the money paid to it by the Home Insurance Company; that under the facts and circumstances hereinbefore outlined, the Commercial Credit Company, Inc., tacitly agreed to pay said money to your petitioner; that due to this agreement and due to the hereinbefore described custom and practice, the insurance money paid to the Commercial Credit Company, Inc., belongs to your petitioner; that this money, according to the custom and practice hereinbefore mentioned, should be paid to petitioner; that if the mortgage of the Commercial Credit Company, Inc., had turned out to be first rank, said insurance money would, according to said custom and practice, have been paid to petitioner; and that the fact that its mortgage is second in rank does not entitle it to apply toward the payment of its chattel mortgage note the money that was paid to it by the Home Insurance Company."

Defendant filed exceptions of no cause or right of action, which were overruled below and have not been reurged here.

Defendant, in answer, admitted that it held a note secured by chattel mortgage against the car owned by Grigsby. It denied all the other allegations of the petition. Further answering, it averred: "21. Further answering, defendant affirmatively shows that there have been no dealings or transactions concerning the repairs of said automobile between it and Wray-Dickinson Company, and that it is obligated in no way whatsoever to pay for said repairs; that said payment was made to it by the Home Insurance Company in accordance with the terms and provisions of the policy and that it is no concern whatsoever of the

Wray-Dickinson Company as to the application of the proceeds of said payment by the Home Insurance Company."

The lower court rendered judgment rejecting plaintiff's demands and it is now prosecuting this appeal.

Plaintiff does not contend there was any express contract between it and defendant by which defendant was to pay for the repairs out of the insurance money. It relies for a contract entirely on custom and usage. Custom may modify, restrict or enlarge a contract into which it enters, but it cannot create a contract or of itself give rise to an obligation. E. Jonas & Company et al. v. Itzkovitch, 9 Orleans· App. 168; American Lead Pencil Company v. Nashville, C. & St. L. Ry., 124 Tenn. 57, 134 S.W. 613, 32 L.R.A.,N.S., 323; State ex rel. Chicago M. & St. Paul Ry. Co. v. Public Service Commission of Missouri, 269 Mo. 63, 189 S.W. 377; First National Bank of Cincinnati v. Burkhardt, 100 U.S. 686, 25 L.Ed. 766; Nat. Sav. Bank of District of Columbia v. Ward, 100 U.S. 195, 25 L.Ed. 621; Tilley v. City of Chicago et al., 103 U.S. 155, 26 L.Ed. 374; 17 Corpus Juris, p. 501, § 64; Josey v. Beaumont Waterworks Company, Tex.Civ.App., 183 S.W. 26.

There is no express contract here and we find nothing giving rise to the theory that an implied contract is deducible from the relations between the parties. The insurer did not enter into a contract with plaintiff and it paid the insurance to the named beneficiary in the policy. It could do nothing more. By the express terms of the policy, the loss was made payable to the defendant herein, the mortgagee; and under all decisions such a stipulation is held to be an unqualified assignment of the policy to the mortgagee. Officer v. American Eagle Fire Insurance Company, 175 La. 581, 582, 143 So. 500.

The defendant did not enter into any contract with plaintiff nor was it consulted by plaintiff about the repair job until it had been completed. There was no action by defendant from which an implied contract with plaintiff could possibly have been deduced.

It is very clear, therefore, that plaintiff is without a right of action against defendant in this case.

Plaintiff contends that Grigsby verbally assigned the insurance policy to it to pay for the repairs. At that time Grigsby had nothing to assign. The policy had been assigned to defendant at the time it was issued.

Assuming that the assignment from Grigsby to plaintiff as claimed was good, we will discuss the next question raised by plaintiff, that is, that defendant is not entitled to the money derived from the insurance policy for the reason it had no insurable interest, in that it failed to show that it was the holder of a mortgage, and failed to show that said mortgage affected third persons. We answer this argument by stating that plaintiff alleged and defendant admitted it held a note of Grigsby, secured by a chattel mortgage on the car. A fact alleged and admitted needs no proof.

We find no error in the judgment of the lower court and it is affirmed, with costs.