Harry A. HEIDEN and Linda Janell Heiden, Plaintiffs-Appellants,

v.

GENERAL MOTORS CORPORATION, Defendant-Respondent.

No. KCD 29195.

Missouri Court of Appeals, Kansas City District.

May 1, 1978.

Motion for Rehearing and/or Transfer Denied June 12, 1978.

Application to Transfer Denied July 24, 1978.

John C. Milholland, Harrisonville, for plaintiffs-appellants.

Douglas Stripp, James F. Duncan, Kansas City, for defendant-respondent.

Before SHANGLER, P. J., WASSER-STROM, J., and HANNA, Special Judge.

WASSERSTROM, Judge.

Plaintiffs seek damages for fraud and deceit allegedly practiced upon them by defendant. Defendant moved to dismiss plaintiffs' petition on the ground that it failed to state a claim upon which relief could be granted. The trial court sustained that motion with leave for plaintiffs to amend within 30 days. Plaintiffs declined to amend, and the trial court thereupon entered final judgment of dismissal with prejudice. Plaintiffs appeal. We affirm.

Plaintiffs' petition can be summarized as follows. In a prior lawsuit, plaintiffs sought damages against defendant for personal injuries and loss of services arising from the alleged defective design of an automobile manufactured by defendant. Extensive depositions were taken in that personal injury action in the states of Missouri, Iowa and Michigan. The various court reporters submitted their bills for costs totaling $2,339.30, which were paid by plaintiffs and which were spread of record on the books of the circuit court. On May 14, 1976, the parties agreed upon a settlement, and their respective attorneys signed and filed with the circuit court a stipulation for dismissal "at defendant's costs."[1] Defendant then remonstrated that the amount of costs reflected on the records of the circuit clerk were in excess of the amount permitted by statute, and at the insistance of defendant, the court administrator calculated the amount of deposition costs properly to be allowed under the statute and assessed those costs at $1,295.10.

Plaintiffs' petition further alleges that no competent reporter is willing to handle depositions for the amount of the statutory scheduled fees; that all such reporters customarily charge higher fees and will not perform their services for the amounts prescribed by the statutory schedule; that there is a custom and practice for such higher charges by the reporters to be certified as deposition costs and to be taxed as court costs in the circuit court of Jackson County; and that when settlements are made and in negotiations for settlement the phrase "court costs" or "costs" means, in addition to the statutory prescribed fees for depositions, the additional amounts which are customarily charged by reporters. Plaintiffs go on to allege that they relied upon the custom and practice described and upon the belief that defendant also relied upon the said custom and practice; that defendant knew that plaintiffs so relied and intended that plaintiffs should believe that the phrase "at defendant's costs" was being

1. The stipulation reads in full as follows: "The parties stipulate and agree that the Fifth Amended Petition and all claims therein are hereby dismissed with prejudice, at defendant's cost, the entire subject matter thereof having been compromised and settled."

used in the sense of the said custom and practice. Plaintiffs then further allege that by reason of the foregoing, defendant represented to plaintiffs that defendant had a present intention of performing the settlement contract in the sense of the custom and practice described, but that said representation was false in that defendant did not intend to pay the full $2,339.30 billed by the reporters, but instead intended to pay only according to the lower statutory schedule (eventually computed by the court administrator to be $1,295.10). Plaintiffs conclude their petition by alleging the actions described to have been fraudulent, for which they pray $1,000,000 compensatory damages and $5,000,000 punitive damages.

The sole question for determination is whether the allegations thus summarized state a cause of action for fraud. Plaintiffs argue that they do within the doctrine of *Thieman v. Thieman*, 218 S.W.2d 580 (Mo. 1949); *Dillard v. Earnhart*, 457 S.W.2d 666 (Mo.1970); *Brennaman v. Andes & Roberts Brothers Const. Co.*, 506 S.W.2d 462 (Mo. App.1974); and *Klecker v. Sutton*, 523 S.W.2d 558 (Mo.App.1975).

Essential to that argument is a showing that defendant did contract in accordance with the custom and usage alleged by the plaintiffs; for if defendant never bound itself to pay pursuant to the alleged custom, then there can be no implied representation to that effect upon which to base any fraud. As stated by plaintiffs themselves in their reply brief: "The question is whether respondent could and did agree (via the custom and practice) to pay the costs actually

incurred by the appellants;" and as they state in another place in the same brief, "The question is * * * whether the custom and practice to pay the actual costs of depositions * * * was embodied in the settlement agreement * * *." Stating the problem slightly differently, the basic question is "what did the parties agree?" This narrows down to an inquiry as to what the parties meant by the term "costs," and specifically whether that term could be expanded through usage and custom to include something more than that included in the statutory schedule.

▪ Costs did not exist at common law, and their allowance is a creature of statute. *McClue v. Epsten*, 492 S.W.2d 97 (Mo.App. 1973). The statute in this state which provides for deposition expenses to be allowed as costs is Section 492.590.[2] That section contains a precise formula specifying just how deposition costs are to be computed.[3]

▪ The employment in the May 14, 1976 agreement of the term "costs," without any further explicit definition, adopted by reference the statutory formula contained in Sec. 492.590. The rule in this respect is that statutes in force at the time and place of making a contract which affect its validity, performance, discharge, or enforcement, enter into and form a part of it as if they were expressly referred to or incorporated within the terms of the contract. *Swabey v. Boyers*, 274 Mo. 332, 203 S.W. 204 (1918); *Lazare v. Hoffman*, 444 S.W.2d 446 (Mo. 1969); *Curators of Central College v. Rose*, 182 S.W.2d 145 (Mo.1944); *Union Pacific*

**2.** All statutory references are to RSMo 1969.

**3.** Section 492.590 provides:

"1. The costs and expenses of taking depositions, together with the fees of recording and copying the same, shall be taxed in favor of the party or parties praying [sic] the same, and collected as other costs in the suit or suits in which such depositions, or any part thereof, may be used.

"2. The costs and expenses so taxed shall be certified by the stenographer or shorthand reporter taking the same and shall be limited as follows:

(1) An attendance fee not to exceed the sum of three dollars per hour.

(2) A transcription fee not to exceed sixty cents per twenty-five line page for taking and transcribing the original of said depositions, and the sum of twenty cents per twenty-five line page for each carbon copy thereof, said page to be approximately eight and one-half inches by eleven inches in size, with left-hand margin of approximately one and one-half inches, right-hand margin of approximately one-half inch; answer to follow question on same line when feasible; such page to be designated a legal page.

(3) A fee of fifty cents for issuing a notarial subpoena.

(4) A fee of fifty cents for each jurat."

*Railroad Co. v. Kansas City Transit Co.,* 401 S.W.2d 528 (Mo.App.1966); *Lux v. Milwaukee Mechanics' Ins. Co.,* 221 Mo.App. 999, 295 S.W. 847 (1927); *De Hart v. School Dist. No. 39, St. Louis County,* 214 Mo.App. 651, 263 S.W. 242 (1924); 17 Am.Jur.2d Contracts, Sec. 257, p. 654. A case which applied the rule under circumstances quite analogous to the one at bar is *Webb-Kunze Const. Co. v. Gilsonite Const. Co.,* 281 Mo. 629, 220 S.W. 857 (1920). In that case, the parties disputed the proper manner in which to measure the amount of certain excavation work. Plaintiff relied upon a statutory formula for measurement. The court held that the statutory method of measurement was incorporated into the contract as a matter of law, absent any contrary provision of the parties. The opinion holds at 220 S.W. l. c. 859:

> "The 'cubic yard' mentioned in the contract is controlled by the statute; it is a statutory cubic yard.
>
> "The statute necessarily applies to contracts for making earth excavations, and must be read as a part of every contract of that character. *Isenhour v. Barton County* 190 Mo. 163, loc. cit. 173, 88 S.W. 759; *Reed v. Painter,* 129 Mo. 674, loc. cit. 680, 31 S.W. 919; *Zellars v. Surety Co.,* 210 Mo. 86, loc. cit. 92, 108 S.W. 548. The rates expressed in the contract must be considered in connection with the statute. There is not a word in that part of the contract indicating how the work shall be measured or what shall constitute a cubic yard. It relates only to the price to be paid after the measurement is made. The statute defines what is meant by a cubic yard * * *."

The plaintiffs, nevertheless, contend that parties may agree upon a manner of computing costs different from the statutory formula and they cite in support of that contention *Schawacker v. McLaughlin,* 139 Mo. 333, 40 S.W. 935 (1897) and *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39 (Mo. banc 1976). It is to be noted, however, that *Schawacker* dealt with a situation where the parties had agreed *expressly* for the taxation of an item as costs which would not otherwise have been covered;

and the generalized statement contained in *Groves* should be understood as likewise referring to an agreement of the parties expressly including into costs an item not covered by statute. That situation where the parties agree expressly must be carefully distinguished from the situation at hand where there was no express agreement expanding the concept of "costs" beyond the statutory limits. What plaintiffs are attempting to do here, is to expand the term by implication through resort to an extrinsic aid to construction, namely custom and usage.

Under the well established law of this state, custom and usage cannot be used to contradict the plain meaning of a written contract. A leading case on this subject is *State ex rel. Chicago, M. & St. P. Ry. Co. v. Public Service Commission,* 269 Mo. 63, 189 S.W. 377, l. c. 379 (banc 1916) which sets forth a strong statement of the rule that custom and usage is admissible to remove ambiguities but not to modify or contradict what is manifest:

> "Usage or custom cannot properly be invoked to aid in the contention of the appellants. The purpose of the contract between the shipper and the carrier is manifest from its terms. While general usage may, in a particular case, be shown to remove ambiguities and uncertainties, it cannot be employed to destroy, modify, or contradict what is otherwise manifest, nor make a contract where there is none; and hence its application in this case is unauthorized."

To the same effect: *Martin v. First Nat. Bank in St. Louis,* 358 Mo. 1199, 219 S.W.2d 312 (1949); *Harbaugh v. Ford Roofing Products Co.,* 281 S.W. 686 (Mo.1926); *Kimball v. Brawner,* 47 Mo. 398 (1871); *Garrett v. American Family Mutual Ins. Co.,* 520 S.W.2d 102 (Mo.App.1975); *Moser v. Lower,* 48 Mo.App. 85 (1892); *Heffernan v. Neumond,* 198 Mo.App. 667, 201 S.W. 645 (1918); *Kalberg v. Gilpin Company,* 279 S.W.2d 177 (Mo.App.1955); *Ryan Equipment Company v. Brewer,* 347 S.W.2d 430 (Mo.App.1961); *Jordan v. Daniels,* 224 Mo.App. 749, 27

S.W.2d 1052 (1930); 25 C.J.S. Customs and Usages § 30a, p. 158; 21 Am.Jur.2d Customs and Usages Sec. 23, p. 697.

It is true that Restatement of the Law, Contracts Sec. 246, comment a, p. 346, states that the application of custom and usage is not confined to words used ambiguously and that "[a] usage may show that the meaning of a written contract is different from an apparently clear meaning which the writing would otherwise bear." This liberal rule is supported by Williston on Contracts, 3d Edition, Vol. 5, Sec. 650, p. 20, and Vol. 3 Corbin on Contracts, § 555, p. 231. The statement that the admissibility of custom and usage is not limited to ambiguities also finds some support in a few of the older Missouri cases: *Evans v. Western Brass Manuf'g Co.*, 118 Mo. 548, 24 S.W. 175 (1893); *Landau Grocery Co. v. Hart*, 223 S.W. 793 (Mo.App.1920). See also *Snoqualmi Realty Co. v. Moynihan*, 179 Mo. 629, 78 S.W. 1014 (1904). However, the majority as well as the more recent of the Missouri cases state a more narrow view and restrict application of custom and usage to only those contracts which are ambiguous. *State ex rel. Chicago, M. & St. P. Ry. Co. v. Public Service Commission, supra; Harbaugh v. Ford Roofing Products Co., supra; Kimball v. Brawner, supra; Pavey and Orr v. Burch*, 3 Mo. 447 (1834); *Garrett v. American Family Mutual Ins. Co., supra; Kalberg v. Gilpin Company, supra; Heffernan v. Neumond, supra; Jordan v. Daniels, supra.*

It is to be noted also that even Sec. 246 of the Restatement states that a usage may have the effect of adding provisions in accordance with the usage only if the added provision is "not inconsistent with the agreement or manifestations of intention." Note also that *Evans* states that a usage may not introduce "something which is repugnant to or inconsistent with the contract," and *Snoqualmi* recognizes the rule "that usage cannot be permitted to control the terms of a special contract by introducing something which is repugnant to or inconsistent with the contract."

■ To permit consideration of the custom and usage alleged by plaintiffs in this case would be to introduce something which is repugnant to and inconsistent with the settlement contract of May 14, 1976. As already demonstrated, that contract incorporated by force of law the statutory formula for computing deposition costs. To allow the different formula contended for by plaintiffs would be in flat contradiction to the statutory formula. A case involving very much the same problem refused to permit such a contradiction. Thus in *Perlman v. First National Bank of Chicago*, 15 Ill.App.3d 784, 305 N.E.2d 236, l. c. 244 (1973), appeal dismissed 60 Ill.2d 529, 331 N.E.2d 65 (1975), the issue was whether a bank was charging interest in excess of a contract rate expressed as being "per annum." The bank calculated the daily interest on the basis of a 360-day year, which it claimed to be in accordance with banking custom and practice. Plaintiff resisted application of the alleged custom, arguing that the statutory definition of "a year" controlled. The court rejected the bank's defense in the following terms:

"The general rule provides that 'if the terms or provisions of a written contract are in any way uncertain or ambiguous, parol evidence of a custom or usage is admissible to explain them or aid in their interpretation and construction. Where the meaning of such terms is unambiguous and free from doubt, a custom or usage cannot be proved to explain the terms of provisions.' * * * The law, including statutes, existing at the time and place of the making of a contract is deemed a part of that contract to the same extent as though expressly referred to or incorporated in the contract. * * The contract in this case, therefore, depends upon the interpretation of the statute, and, once the trial court determines the legislative intent as expressed in the statute, the meaning of the contract is clear."

Moreover, practical considerations affecting public policy strongly support a refusal to permit an alleged custom and usage to override the statutory formula. Deposition

costs must be examined and taxed by the court clerk. Sec. 514.330. An improper taxation of costs by the clerk exposes him to penalty for committing a misdemeanor. Sec. 514.320. By holding the statutory formula controlling, the circuit clerk is given the benefit of a dependable guide for his action. On the other hand, to permit a modification of what constitutes permissible costs by alleging a different custom and usage would make for a very unsettled situation and would open vexing questions as to the following matters: the question of whether there is in fact a custom and usage as claimed; the question of just what items of expanded cost are to be included and the extent of allowability; and the question of whether each of the parties affected knew of the alleged custom and practice or were in possession of such facts as to create constructive knowledge.

Still a further factor is entitled to consideration. Let us assume that existing and controlling Missouri case law were to be liberalized so as to permit the term "costs" as used in the May 14, 1976 settlement to be interpreted in the light of custom and usage. Even if there were to be such a change in contract law, it would be completely unfair to accuse defendant of fraud because it acted upon the law which existed at all times here pertinent.

The most that any relaxation of the rule in question should accomplish should be to open the door for a jury to find a contract on different terms than those for which defendant contends—but it would not authorize a jury to find that defendant practiced a fraud merely because it intended to perform pursuant to and in the light of legal principles then in force rather than in accordance with some new rules not yet adopted. This matter, however, need not be pursued for we have neither the inclination nor the authority to change the legal doctrines announced in the Missouri cases which control the interpretation of the settlement agreement here involved.

The trial court correctly ruled that the construction of the term "costs" as used in the settlement agreement is controlled by Sec. 492.590 and is not subject to contradiction by an alleged variant custom and practice. The judgment is therefore affirmed.

All concur.

