EDWARD MATERNE et al., Appellants, *v.* BENNO HORWITZ et al.,
Respondents.

Prior to the passage of the Penal Code, which makes it a misdemeanor to
sell, or offer for sale, any package of goods falsely marked as to place
where manufactured, quality or grade (§ 438), a contract for the sale
of goods to be furnished with deceptive labels, intended by the parties
and calculated to deceive customers of the purchaser, was against public
policy, and the courts will not aid either party to enforce such a contract.
Where, therefore, plaintiffs contracted to sell and deliver to defendants
domestic sardines with labels upon the boxes representing that they were
put up at foreign ports by firms there engaged in the sardine trade, it
being known to both parties that the labels were used to deceive the
consumers, — *Held*, that plaintiffs were not entitled to maintain an action
to recover the contract price for the sardines, which plaintiffs tendered,
but defendants refused to accept and pay for.

(Argued February 3, 1886 ; decided March 2, 1886.)

APPEAL from judgment of the General Term of the Su-
perior Court of the city of New York, entered upon an order
made at the February Term, 1884, which affirmed a judgment
in favor of defendants, entered upon an order dismissing the
complaint on trial.   (Reported below, 18 J. & S. 41.)

This action was brought to recover the contract price for
four hundred cases of sardines.

The following facts appeared.  The plaintiffs and defend-
ants were wholesale dealers in sardines.  They entered into a
written agreement by which the former were to sell and the
latter to buy four hundred cases of " domestic sardines," the
boxes in the cases to have " fancy labels upon them."  Domes-
tic sardines were fish taken and packed in Maine, and " fancy
labels" were decorated labels in a French style.  The plain-
tiffs knew that these labels would contain a statement in sub-
stance that the contents of the box had been packed in France,
in olive oil, by persons named on the label.  One of the plain-
tiffs testified that imported sardines come mostly from France
and are worth in the market about fifty per cent more than
domestic sardines on account of the quality and the duty.  The

goods tendered by the plaintiffs under the agreement, had upon them labels like those described bearing names that were apparently names of French packers, doing business in France.

It did not appear that there were any persons of that name. Defendants refused to accept or pay for the sardines so tendered.

*Charles D. Adams* for appellants. To relieve defendants from liability under their contract, it was necessary to prove affirmatively an intent to defraud on plaintiffs' part. (Laws of 1850, chap. 123 ; Laws of 1862, chap. 162 ; Laws of 1863, chap. 209 ; Laws of 1878, chap. 401 ; *Low* v. *Hall*, 47 N. Y. 104 ; *Rudderow* v. *Huntington*, 3 Sandf. 256.) There being at the time when this contract was made, in 1881, no statute forbidding it, it was a valid contract for the sale of goods, unless it was absolutely void on grounds of public policy, because the goods were in shape to be used, if the vendee saw fit to defraud the public. (*Tracy* v. *Talmadge*, 14 N. Y. 162 ; *Sacketts Harbor Bk.* v. *Codd*, 18 id. 244.) It is no defense to an action brought to recover the price of property sold, that the vendor knew it was bought for an illegal purpose, provided it is not made a part of the contract that it shall be used for that purpose, and that the vendor has done nothing in aid or furtherance of the unlawful design. (*Gansen* v. *Tifft*, 71 N. Y. 57 ; *Webber* v. *Donnelly*, 33 Mich. 172.) The goods plaintiffs tendered were precisely what the contracts called for, and the transaction was not prohibited by law. (*Kreiss* v. *Seligman*, 8 Barb. 439, 449–50.) On reselling, the plaintiffs acted as agents of the defendants, and were only bound to good faith, and reasonable care and dilligence. (*Dustan* v. *McAndrew*, 44 N. Y. 72, 79 ; *Smith* v. *Pettee*, 70 id. 13 ; *Sherwood* v. *Ribbons*, 6 Weekly Dig. 231 ; *O'Brien* v. *Jones*, 15 J. & S. 67.)

*Otto Horwitz* for respondents. The enforcement of this contract, whereby the plaintiffs would be enabled to sell the merchandise in question, thus fraudulently packed and labeled, would be against public policy as well as a violation of the statutes, and

will not be enforced by the courts.   (3 Barb. 228 ; *Seneca Co.
Bk.* v. *Lamb*, 26 id. 595 ; Story on Cont., § 613 ; *Barton* v.
*Port J., etc., Plank Road Co.,* 17 Barb. 397 ; *Griffiths* v. *Wells*,
3 Denio, 226.)

MILLER, J.   It must be assumed, we think, that the defend-
ants knew when the agreement was made that they intended
to purchase sardines of the kind that were tendered to them,
and that the plaintiffs understood that the defendants knew it.
It is also inferrable that the defendants entered into the agree-
ment, to the knowledge of the plaintiffs, for the purpose of
selling the goods to others in the condition in which they were
when delivered.   It is also evident that the labels were used to
deceive the consumers and not the contractors, and to obtain
higher prices for the sardines.   The plaintiffs procured and
furnished the deceptive labels, after binding themselves by con-
tract to do so, and this was done for an unlawful purpose, and
with a view of furnishing goods for the market in a condition
calculated to deceive the consumers who might purchase them.
It is, therefore, apparent that it was part of the contract that
an unlawful object was intended, of which both parties were
cognizant, and that it was designed by them, under the contract,
to commit a fraud and thus promote an illegal purpose by de-
ceiving other parties.   In such a case the courts will not aid
either party in carrying out a fraudulent purpose.

To carry out this contract would be contrary to public
policy, and in such a case, as we have seen, the court will not
aid either party.

Under the Penal Code (§ 438), it is made a misdemeanor to
sell or offer for sale any package falsely marked, labeled, etc.,
as to the place where the goods were manufactured, or the
quality or grade, etc.   The contract in question would seem to
be covered by this provision of the Code, but as the Penal Code
did not go into effect until May 1, 1882, and this contract was
made June 30, 1881, the section cited has, we think, no bear-
ing on the question presented.

The case was properly disposed of upon the ground first

stated, which is fully considered and elaborated in the opinion of the General Term by SEDGWICK, J., in which we concur.

The judgment should be affirmed.

All concur.

Judgment affirmed.