HENRY EATON et al., Respondents, v. THE WEAR COAL COMPANY, Appellant.

Kansas City Court of Appeals, April 1, 1907.

1. **CONTRACTS: Mutual Promises: Vendor and Vendee.** To make one promise a good consideration for another it must impose an obligation of the promisor, which if not performed will afford the promisee a cause of action arising out of its breach, otherwise it is void for the want of consideration; and to hold the vendor for failure to deliver goods, the vendee must be bound to receive a definite quantity.

2. ———: ———: ———: **Interpretation.** In the construction of any contract the chief concern is to ascertain and give effect to the intention of the parties, but court-made contracts cannot be

imposed upon the parties; and the intention must be gathered from the contract itself and any implication must necessarily follow the actual terms of the agreement.

3. ——: ——: ——: ——. A contract is construed and held clearly to intend that the vendee gave and the vendor accepted an order for fifty cars of coal, six of which were to be delivered at stated times, and the remainder at the convenience of the vendee, but within a reasonable time; and the same is therefore mutual and properly pleaded.

4. ——: ——: ——: ——: Amendment. *Held*, that the subsequent correspondence between the parties showed the mutuality of the contract and, if need be, amounted to an amendment in that respect, which relates back to the incipiency of the agreement and purges it of every defect of mutuality.

5. APPELLATE PRACTICE: Parties Plaintiff: Corporation: Officers. Where the sole interest of an individual executing a contract is that of the corporation of which he is the executive officer, he is an improper person to the enforcement of the contract.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale,* Judge.

REVERSED AND REMANDED.

*O. T. Hamlin* and *Rust & Campbell* for appellant.

(1) The petition states a cause of action, and the evidence tends to prove the allegations of the petition. Laclede Co. v. Iron Works, 169 Mo. 137; Publishing Co. v. Walker, 87 Mo. App. 305. (2) The court erred in giving the declaration of law which was in the nature of a demurrer to the evidence. Laclede Co. v. Iron Works, 169 Mo. 137; Publishing Co. v. Walker, 87 Mo. App. 305. (3) The court erred in refusing to admit in evidence the three letters set out in our statement, written by Henry Eaton to the defendant, one dated October 8, 1902, one dated December 19, 1902, and the other dated December 24, 1902.

*Francis C. Downey* for respondent.

JOHNSON, J.—Action to recover damages result-
ing from the alleged breach of a contract for the sale of
personal property. A jury was waived and the learned
trial judge after hearing the evidence entered judgment
for defendant, from which this appeal is prosecuted by
plaintiff.

In the petition, after stating that plaintiff, the
Springfield Coal, Ice & Transfer Company, is a corpo-
ration engaged in the business of dealer in coal in the
city of Springfield, that plaintiff, Henry Eaton, is pres-
ident of said corporation, and that defendant also is a
corporation engaged in the same business in Kansas
City, plaintiffs allege "that on September 23, 1902, plain-
tiffs purchased from defendant corporation at Spring-
field, Missouri, fifty cars of deep shaft screened lump
coal at the sum and price of two dollars per ton f. o. b.
at the coal mines of defendant in Weir City, State of
Kansas; that said purchase was made by plaintiffs with
the duly authorized agent of defendant corporation, to-
wit, J. W. Fisher, who was then and there the salesman
for said defendant corporation, said sale and contract
being witnessed by a written agreement signed by said
agent, which is in words and figures as follows:

"September 23, 1902.

Please ship to Henry Eaton, Pres., at Springfield,
via Frisco Railway,

Three cars  deep  shaft  shaker  screened  coal
    at once, at .............................$2.00
Three cars deep shaft shaker screened coal Mon-
    day, at ................................ 2.00
Swan preferred, book fifty cars lump coal in all.

(Signed) J. W. FISHER, Salesman.

The above order is not binding until accepted in
writing by the general office. Confirming telegram of
this date."

Said order was at said time delivered to the de-
fendant and is now in its possession and the said sale

was thereafter, towit, on the twenty-fourth day of September, 1902, accepted in writing by defendant; that the defendant corporation in accordance with said contract and in recognition thereof, furnished plaintiff six cars of coal which was received and accepted by it, and that after furnishing the said six cars, defendant corporation refused, neglected and wholly failed to furnish any more, or in any way fulfill, carry out, or comply with said contract, though frequently requested by plaintiff so to do."

In the answer is included a general denial, a specific denial of the existence of the contract alleged in the petition; the plea that Henry Eaton has no interest in the cause of action alleged and therefore, should not be included as a party plaintiff, and the further plea that the contract alleged in the petition is wanting in mutuality, and therefore is void in law and in fact. In addition, a counterclaim is pleaded, but the questions presented for our determination do not call for its consideration. The reply filed by plaintiff is a general denial.

From the evidence offered by plaintiff at the trial, it appears that Mr. Fisher, a traveling salesman employed by defendant, received from Mr. Eaton, as president of the plaintiff corporation, an oral order which he transmitted in writing to his principal. This order is correctly stated in the petition, and, by its terms, defendant did not become bound to fill it until it was accepted "by the general office" of defendant. On the day following the giving of the order (September 24th) dedefendant, by the hand of its general sales agent at its general office in Kansas City, mailed to plaintiff the following letter of acceptance, which was received by plaintiff in due course: "We are in receipt of your order of the twenty-third, given our Mr. Fisher, for fifty cars southern Kansas lump; three cars to be shipped at once, and three cars the early part of next week; the balance

to be shipped as you may direct, price net to us, two dollars per ton f. o. b. mines. The order has been so entered and we will endeavor to give you early shipment. There is a heavy demand for coal at present, and car supply is limited indeed, but we will make special effort to take care of your order, and when you wish additional shipments on the fifty car order at above prices please advise us, and we will endeavor to give you prompt service. Thanking you for favoring us in this matter, we are, yours truly."

The three cars for immediate shipment and the three to be shipped the Monday following were duly delivered by defendant and accepted by plaintiff, and this controversy involves the question of defendant's obligation to deliver on the subsequent requests of plaintiff the remaining forty-four cars mentioned in the order.

Shortly after the order was taken, the price of coal advanced. Plaintiff, from time to time, insisted on the delivery of the forty-four cars, but defendant failed to deliver any of them and ultimately plaintiff was compelled to go into the market and buy coal at a higher price than that provided in the order. Plaintiff seeks to recover, as damages, the difference between the contract price of the forty-four cars of coal and the market value thereof at the time it should have been delivered. Defendant objected to the reception in evidence of any of the correspondence between the parties relating to the repeated requests made by plaintiff for the delivery of the forty-four cars, on the ground that as the contract pleaded in the petition on its face shows that defendant was under no legal obligation to deliver any other cars than the six it did deliver, the petition fails to state a cause of action. The learned trial judge admitted some of the letters offered, but later adopted the view of defendant with reference to the sufficiency of the facts stated in the petition to constitute a cause of action, and refused to admit in evidence the remaining

letters comprising the correspondence. Plaintiff, there-
upon, offered to amend the petition, but the court held
that the infirmity should not be regarded as consisting
of a mere defective statement of a cause of action but of
a failure to show the existence of any cause of action
at all, and refused to permit the amendment. The corres-
pondence offered, which we deem to be material to the
questions before us, consists of the following letters:

From plaintiff to defendant October 8, 1902:
"Please rush my order for lump coal as I am running
short."

From defendant to plaintiff October 10, 1902: "We
have your favor 8th requesting us to hurry shipment on
your order for lump coal. We wish to advise that we
are doing all we can to take care of your orders. We
are considerably behind on our orders but will let a
car or two go forward at the earliest possible date. The
last car we shipped you was on October 1st. Our car
supply is very limited and the railroad company is con-
fiscating our coal in transit daily. This accounts for
conditions."

From defendant to plaintiff, October 27: "We are
just in receipt of a communication from our Mr. Fisher
requesting us to make special effort to give you some
coal on the order which you gave us sometime since,
and we wish to assure you that we are doing everything
in our power to take care of this order, but as you are,.
doubtless, aware, it is absolutely impossible to secure
sufficient cars to meet the requirements of the trade and·
the railroad companies are making heavy demands for
company coal and are confiscating practically every
car which we ship commercially. You, therefore, see
the position in which we are placed and how helpless we
are to give our customers anything like our usual prompt
service. We will do everything in our power to supply
you with coal when it is possible to do so, but this is all
we can promise under the present conditions."

From plaintiff to defendant December 9: "I am out of coal and have contracts that I cannot afford to lose. So please try and ship immediately four or five cars lump coal a week."

From defendant to plaintiff December 11: "We are in receipt of your favor 9th and note that you are out of coal and request us to increase your order to four or five cars lump per week, and we have instructed the mines accordingly. We wish to acknowledge to you frankly that present conditions are beyond our control, and it is impossible to give you any definite information regarding future supply. There has been such an unusually heavy demand for coal and the car supply has been limited and the railroad companies are confiscating coal daily in transit, so it is impossible for us to give our customers our usual prompt service. We will do the best we can for you at all times, and this is all we can promise under present conditions."

From plaintiff to defendant December 16: "I am simply swamped on orders and not a pound on hand to fill them with. Can't you rush some lump down here?"

From defendant to plaintiff December 19: "We note that you state that you are swamped on orders and no coal in sight and ask if we can rush some coal forward, and we wish to advise that we are doing everything we can do for you under the conditions. The railroad companies are making such unusually heavy demands for coal for company use and confiscating cars daily in transit, also car supply is very limited, so it is impossible to give our customers our usual prompt service. All that we can promise is that we will do the best we can for you under present conditions. Assuring you that your orders shall have our best attention," etc.

Other letters of like tenor were exchanged, but it is unnecessary to encumber this statement with them. In one written on December 23, defendant said: "If you

will make some inquiry, you will find that all orders for coal accepted by this company are accepted subject to usual conditions regarding our car supply, strikes, or other contingencies over which we have no control. . . . *We are not denying your order in the least,* but it has been impossible to take care of the same as you requested."

No point is made that the contract in issue falls within the Statute of Frauds, and as it evidently does not, that subject will be passed without discussion.

The position so successfully maintained by defendant to this time is this: The cause of action pleaded in the petition is predicated on a contract which was evidenced by an oral order given by plaintiffs as transmitted to defendant by its traveling salesman and the written acceptance thereof by defendant. The contract thus made bound plaintiffs to receive and pay for six cars of coal and attempted to give them the option or privilege of making future purchases of coal from defendant to the amount of 44 cars at the price fixed, and did not create an absolute undertaking on the part of plaintiffs to purchase any of said additional cars. Therefore, it is argued that with respect to these contemplated future purchases, the contract is lacking in mutuality and for that reason, is void.

A promise is a good consideration for a promise, but in order that it may constitute such consideration, it must impose an obligation on the promisor which if not performed will afford the promisee a cause of action arising from its breach. A promise of one party to an agreement to deliver specific articles at certain prices without any agreement of the other party to order or accept any amounts or quantities of the articles is a *nude pact,* and being unilateral, is void for want of consideration. A contract for the future delivery of property is invalid for want of consideration if the delivery thereof is not to be made except on future or-

ders of the vendee, and the giving of such orders is left entirely to his option. To constitute a valid contract, there must be an obligation on the part of the vendee to receive a definite quantity. This does not mean that the number of the articles or weight must be specifically stated, but that from the terms of the contract and the circumstances surrounding the subject-matter, the quantity which the vendee is bound to accept must be a matter of definite ascertainment. Thus a contract wherein a vendor agrees to furnish and a vendee to accept all of the supplies of a certain kind that may be needed in the construction of a building or railroad, or to furnish all of a certain merchandise that may be consumed in an established business during a fixed period of time, is valid, because the quantity of the article to be furnished is susceptible of accurate ascertainment. On the other hand, a promise to furnish at stated prices such quantities of the articles as the tentative vendee may, in the future, choose to order, is void not only on account of the uncertainty as to the quantity he may order, but because it imposes on him no obligation to order even the smallest quantity. These principles are too well settled to require elaboration, and we content ourselves with citing a few of the many cases in which they are discussed. [Laclede Co. v. Tudor Iron Wks. 169 Mo. 137; American Publishing Co. v. Walker, 87 Mo. App. 503; Laclede Construction Co. v. Tie Co., 185 Mo. 25; Cold Blast Transportation Co. v. Kansas City Bolt and Nut Works, 114 Fed. Rep. 77.] We are especially impressed with the soundness of the views so clearly expressed by SANBORN, J., in the case last cited and finding them to be fully sustained by the weight of authority adopt them as our own.

Turning to the terms of the agreement embodied in the order of the vendee, and its acceptance by the vendor, the question of first importance presented for our consideration is whether on a fair and reasonable inter-

pretation of the language employed considered in the light of the subject-matter, the vendee became bound to accept and pay for fifty cars of coal, or assumed no greater obligation than that of accepting the six cars for which definite times of delivery were provided.

In the construction of every contract the chief concern of courts should be to ascertain and give effect to the intention of the parties. But great care must be exercised to avoid the imposition of court-made contracts, and the intention of the parties is not to be inferred from what the court may think they should have done in a given situation, but is to be gathered from the terms of the contract itself. And, though it is well settled that obligations not expressly stated in the contract may be implied, the conclusion resulting in such implication must be one that necessarily follows from the terms actually expressed by the parties themselves. [Jones v. Durgin, 16 Mo. App. 370; Lewis v. Insurance Co., 61 Mo. 534.]

It is not suggested that the terms stated in defendant's written acceptance of the order given by plaintiffs to its traveling salesman are in excess or defect of those embodied in the order. Regarding the order and acceptance as constituent parts of a single contract, and construing them together, we find no difficulty in arriving to the conclusion that it was the intention of the parties to exchange promises of a character to impose on each an obligation which, if not performed as agreed, would give to the other a cause of action. The expression in the order "Book 50 cars lump coal in all," standing alone, perhaps should be treated as being so ambiguous as to require parol explanation, but the interpretation thereof in the letter of acceptance removes the ambiguity, and as each party acted on the interpretation thus given, their adoption thereof by conduct established that interpretation as an integral part of the contract. It is clear that the

vendee intended to give and the vendor to accept an order for fifty cars of coal, six of which were to be delivered at stated times, and the remainder at the convenience of the vendee, but within a reasonable time. The expression "the balance to be shipped as you may direct" should not be understood as meaning that the vendee had the option by merely refraining from giving any future orders to escape his obligation to accept the forty-four cars. All parts of a contract must be construed together in arriving at the true intent, and considering this provision in connection with its context, it is apparent the parties intended that the vendee should not be compelled to accept the forty-four cars at any particular time or times, but was bound to order their delivery within a reasonable time and within that scope was to have the privilege of suiting his own convenience as to the times and quantities in which he would receive them. The vendor, in its letter of acceptance, assures the vendee that the order "has been so entered" for fifty cars, and that it will "endeavor to give you early shipment." This is followed with the observation that "there is a heavy demand for coal at present and car supply is limited, indeed" but the promise is given: "We will make special effort to take care of your order and when you wish additional shipments of the fifty car order at above prices, please advise us and we will endeavor to give you prompt service." This does not mean that the vendor intended otherwise than that the parties should be reciprocally bound to deliver and receive all of the fifty cars, and is consistent with the view that the delivery of the whole order was to be accomplished within a reasonable time, and that so far as the unfavorable conditions then prevailing would admit, the vendor would make every effort to suit the convenience of the vendee.

Thus we have before us on the face of the contract, mutual, definite promises, each of which constituted a

valid consideration for the other. There is no indefinite-ness either as to time, place, quantity, quality or price. The contract as pleaded in the petition is not lacking in mutuality, and the learned trial judge erred in his view that it was subject to this infirmity, and that conse-quently the petition failed to contain a statement of a cause of action.

The correspondence between the parties that fol-lowed the making of the contract, all of which should have been admitted in evidence, shows beyond dispute that each party acted on the understanding that the vendor was bound to deliver and the vendee to receive the forty-four cars. The vendee repeatedly ordered shipments to be made and the vendor promised to make them, and afterwards endeavored to excuse its failure of performance, not on the ground of any invalidity in the contract, but on the existence of adverse conditions which prevented it from performing its undertaking. Could it be said that the original contract was wanting in mutuality, the subsequent mutual promises exchanged by the parties in the correspondence relating to the subject-matter was sufficient to cure the infirmity, since it is a well-settled doctrine that "want of mutuality in the inception of a contract may be remedied by the sub-sequent conduct of the parties." [Laclede Construction Co. v. Tudor Iron Works, 169 Mo. (1. c.) 151.] And when thus remedied, the original agreement purged of its defect is to be treated as valid from the beginning. [Lindell v. Rokes, 60 Mo. 249; Jones v. Durgin, supra.]

We agree with defendant that Henry Eaton is not a proper party plaintiff. In all that he did, he acted only as the agent of his co-plaintiff. He was not a party to the contract and no right of action inured to him on account of its breach. He should be dismissed from the action.

It follows from the views expressed that the judgment must be reversed and the cause remanded. All concur.