.J. F. HEFERNAN, trading as UNITED STATES SUGAR FEED CO., Respondent, v. KARL NEUMOND, et al., Appellants.

St. Louis Court of Appeals. Opinion Filed February 11, 1918.

1. **CONTRACTS: Mutuality: Acceptance.** A contract is not lacking in mutuality which provides for the sale of a definite quantity of mixed feed, though it does not in explicit words recite that the buyer agrees to purchase and pay for the same, such being implied by the acceptance of the contract by the buyer by signing his name thereto.

2. ———: ———: **Acts of the Parties.** Furthermore, the subsequent acts of the parties and part performance of the contract would suffice to render it mutually binding and enforceable.

3. ———: **Evidence: Customs and Usages: Modification.** Evidence offered by the seller, his mill having been destroyed by fire, with a view of showing the existence of a custom "in the trade" to excuse the manufacturer in such cases, was properly excluded, the contract being absolute upon its face, and containing no provision against such a contingency.

4. ———: Sales: Nonperformance: Excuse. The mill having been destroyed by fire, the contract being absolute upon its face, and containing no provision against such a contingency, the seller is not excused thereby from a performance of the contract; it not being a case where the subject-matter of the contract went out of existence, through no fault of the contracting party, rendering the contract incapable of performance.

5. ———: ———: Actions: Defenses: Illegality. While it is a good defense to a contract valid on its face that it was intended by the contracting parties to violate the law in performance thereof, a buyer of feed for resale cannot be denied relief on account of the seller's nonperformance, unless it was his intention in disposing of the feed to violate the law.

6. ———: ———: Violation of Law: Question for Jury. In an action for damages for breach of contract for the sale of feed, the question whether the buyer who acquired the feed for resale did so with the intention of violating the pure food laws as to branding, *held* a question for the jury.

7. ———: ———: ———: Food: Pure Food Laws: Intention. Though, intention is immaterial in determining whether there was a violation of pure food statute, the intent of a buyer of feed who expected to resell, is material in determining whether the contract of purchase was tainted with illegality.

8. EVIDENCE: Admissibility: Intent. Plaintiff, in an action for breach of contract, may, where it is material as to whether he intended to resell the feed purchased in violation of law, testify as to his intent.

9. ———: ———: Other Transactions. In an action against the seller's assignees for breach of contract for the sale of feed, where defendants asserted that the contract was unenforceable because the buyer intended to resell the feed in violation of the pure food statutes, evidence of contracts and letters passing between the buyer and the seller, who fulfilled previous contracts, for the purpose of establishing that the buyer in the past had trouble with the agricultural departments, was properly excluded because unconnected with the matter in controversy.

10. ———: ———: Collateral Issues. Such evidence was also properly excluded, because it would have raised various separate collateral issues relating to the buyer's conduct in previous years.

11. INSTRUCTIONS: Damages: Measure of Damages. In an action for damages for breach of a contract to sell feed which was manufactured according to a special formula and could not be obtained on the open market, it appeared that defendant, when unable to supply plaintiff with the feed, consented that he should purchase feed manufactured with a substitute for one of the

ingredients which could not be secured, the price being the same as if the original ingredient had been obtained. *Held* that, while ordinarily the measure of a buyer's damages is the difference between the contract price and the market value of the goods, and if the goods have no market value the difference between the contract price and the reasonable value of the goods, plaintiff was entitled to recover as damages the difference between the price of the feed contracted for and the actual cost of the best available substitute, provided it was impossible to procure feed exactly like that contracted for at a lower price than that at which the substitute could be obtained.

12. ———: ———: ———: **Review: Harmless Error.** In such case, as defendant consented to plaintiff's accepting the substitute, an instruction, allowing plaintiff to recover the difference between the actual cost of the best available substitute and the contract price, was harmless to defendant.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. Leo. S. Rassieur,* Judge.

Affirmed.

*Greensfelder & Levi* for appellants.

(1) (a) The contract sued upon was not admissible in evidence, being without consideration, lacking mutuality and unilateral in form, though signed by both parties. Campbell v. Handle Co., 117 Mo. App. 19; Cold Blast Transportation Co. v. K. C. Bolt & Nut Co., 114 Fed. Rep. 77; Iron & Rail Co. v. Railroad, 148 Mo. App. 173; Rehm-Zeiher Co. v. Walker Co., 160 S. W. 777; Brown Paper Box Co. v. Mercantile Co., 190 Mo. App. 584; Hudson v. Browning 264 Mo. 58-65; Hill v. Hunter, 157 S. W. 247; Mutual Film Corp. v. Morris & Daniel, 184 S. W. 1060. (b) Part performance in this case did not make up for want of mutuality in the contract. Morrow v. Southern Express Co., 101 Ga. 810; American Refrigerator Transfer Co. v. Chilton, 94 Ill. App. 61; Savannah Ice Delivery Co. v. American Refrigerator Transit Co., 110 Ga. 142; Gray v. Hinton, 7 Fed. 81. (2) Defendants' peremptory instruction should have been given for the following reasons: (a) Plaintiff having aided in and insisted upon an illegal

method in the performance and execution of the agreement sued upon cannot compel enforcement of the contract at this time: Materne v. Horwitz, 101 N. Y. 469; Cavan v. Milburn, L. R., 2 Ex. 230; Gaylord v. Soragen, 32 Vt. 110; Aiken v. Blaisdell, 41 Vt. 655; Fisher v. Lord, 63 N. H. 514; Fineman v. Sacks, 33 Kan. 621; Banchor v. Mansel, 47 Me. 58; Church v. Proctor, 66 Fed. 240; (b) There being an admitted violation of a positive statute plaintiff cannot recover on account of breach of contract. Hagerty v. St. Louis Ice Mfg. & Stor. Co., 143 Mo. 238; St. Louis Fair Ass'n v. Carmody, 151 Mo. 566; Curran v. Downs, 3 Mo. App. 468; Buckingham v. Fitch, 18 Mo. App. 91; Rice Bros. & Nixon v. National Bank of Commerce, 98 Mo. App. 696; Tandy v. Commission Co., 113 Mo. App. 409; In re Canfield, 190 Fed. 266; Genessee Valley Milk Products Co. v. Jones Corp., 124 N. Y. Sup. 1009; 2 Elliott on Contracts, secs. 648 and 656; Small & Co. v. Commonwealth, 134 Ky. 272; Williston on Sales, sec. 675, p. 1142; Cowan v. Milburn, L. R. 2 Ex. 230. (c) The question of intent is not material in violating pure food statutes. State v. Griffith, 67 Mo. 287; Beckham v. Nacke, 56 Mo. 546; State v. Bruder, 35 Mo. 475, 1 Cyc. 943; 1 Amer. & Eng. Enc. of Law, 744, 12 Cyc. 148; 8 Amer. & Eng. Enc. of Law, 201; Mullen v. State, 82 Ala. 42; State v. Zichfeld, 34 L. R. A. 784; State v. Southern Ry. Co., 41 L. R. A. 246; State v. Scoggins, 10 L. R. A. 542; State v. McLean, 121 N. C. 589, 42 L. R. A. 721; State v. Edwards, 69 L. R. A. 667; People v. Roby, 52 Mich. 577; Jaycox v. U. S., 107 Fed. 938; People v. Laesser, 79 N. Y. Sup. 470; People v. Kibler, 106 N. Y. 321; U. S. v. Bayaud, 16 Fed. 376; Todd v. Ferguson, 161 Mo. App. 624. (d) Where an act forbidden by law is intentionally done the criminal intent is thereby consummated. State v. Silva, 130 Mo. 464; State v. Johns, 124 Mo. 385; State v. Gregory, 170 Mo. 606; State v. Nocton, 121 Mo. 554; State v. Beard, 126 Mo. 554; Inhabitants of Salem v. Inhabitants of Lynn, 13 Metcalf, 545; Haynes v. Rutter, 24 Pick, 242; Toal v. City of N. Y., 69 N. Y. Sup. 454; Gale v. Insurance

Co., 41 N. H. 170; Ballard v. Lockwood, 1 Daly, 164; Harris & Mitchell v. Amoskeag Lumber Co., 97 Ga. 469; Palmer v. Pinkham, 33 Me. 34; Burlingame v. Rowland, 77 Cal. 317; Hunds v. Keith, 57 Fed. 1013; Conemaugh Bwg. Co. v. Bennett, 60 Pa. Sup. Ct. 543; Blandi v. Pelligrini, 60 Pa. Sup. Ct. 552. (e) If plaintiff cannot establish his case otherwise than through the medium of an illegal transaction to which he himself was a party the contract will be held illegal. 2 Elliott on Contracts, sec. 678,. p. 33; Harrison v. McCluney, 32 Mo. App. 481-487; Tyler v. Larimore, 19 Mo. App. 445, 454; Kitchen v. Greenabaum, 61 Mo. 110, 114; Bick v. Seal, 45 Mo. App. 475, 477; Friend v. Porter, 50 Mo. App. 89, 92; Sumner v. Sumner, 54 Mo. 340, 346; Cherokee Strip Live Stock Ass'n v. Cass Land & Cattle Co., 138 Mo. 394, 406; Pendleton v. Asbury, 104 Mo. App. 723. (3) Whether a contract is contrary to public policy is a question of law to be determined from the circumstances of the case. Spangenberg v. Spangenberg, 126 Pac. 382; Weber v. Shay, 56 Ohio St. 116; Detroit Salt Co. v. National Salt Co., 134 Mich. 121; Kuhn v. Buhl, 251 Pa. St. 370, 9 Cyc. 483. (4) The court erred in permitting plaintiff to testify as to his future intention, as same was in the form of a self-serving statement. Plaintiff's intentions were all expressed in correspondence and the court should have directed the jury that as a matter of law that if intent was a material feature of the controversy, that the letters were sufficient to establish intent upon the part of the plaintiff to violate the law. Lumber Co. v. Railroad, 243 Mo. 244; Spiva v. Osage Coal & Mining Co., 88 Mo. 75; Powell v. Powell, 23 Mo. 373; State v. F. Lefaivre, 53 Mo. 471; Furber v. K. C. Bolt & Nut Co., 185 Mo. 301; Jackson v. Hardin, 83 Mo. 175; Burress v. Blair, 61 Mo. 140; Henry v. St. Louis, Kansas City & Northern Ry. Co., 76 Mo. 293; Pemberton v. Dooley, 43 Mo. App. 177; Ford v. Dyer, 148 Mo. 528; Davies v. Peoples Ry. Co., 159 Mo. 1; Michael v. St. Louis M. F. Ins. Co., 70 Mo. App. 26. (5) Having permitted plaintiff to testify as to his intention, defendants

should have been permitted to prove by the 1909, 1910 and 1911 contracts and correspondence pertaining thereto for the purpose of showing that plaintiff's previous conduct was inconsistent with his intent as to his future conduct then expressed. Bainbridge v. State, 30 Ohio State, 274; People v. Bidleman, 104 Cal. 613; Toll v. State of Fla., 40 Fla. 172; People v. McLaughlin, 37 N. Y. Sup. 1013; Manheimer v. Harrington, 20 Mo. App. 301; Owens v. Railroad, 120 Mo. App. 327; Dodge v. Knapp, 112 Mo. App. 525; Whitman v. Supreme Lodge Knights and Ladies of Honor, 130 Mo. 48; Davis v. Bovies, 141 Mo. 241; State v. Spray, 174 Mo. 578; State v. Bailey, 190 Mo. 280; State v. Spaugh, 200 Mo. 594; State v. Wilson, 223 Mo. 168; Powell v. Railroad, 229 Mo. 272; St.. .e v. Hyde, 234 Mo. 224. (6) The court's instruction on the question of measure of damages did not properly declare the law. Where delivery is required to be made by installments the measure of damages will be estimated by the value at the time delivery should have been made. Sagola Lumber Co. v. Chi Title & Trust Co., 121 Ill. 297; Mo. Furnace Co. v. Cochran, 8 Fed. 463; Hewson-Herzog Supply Co. v. Minn. Brick Co., 55 Minn. 534; Mayne on Damages, sec. 206; Brown v. Muller, 7 Ex. 324; Henry v. St. Louis, Kansas City & Northern Ry. Co., 76 Mo. 288, 293; Pemberton v. Dooley, 43 Mo. App. 177; Ford v. Dyer, 148 Mo. 540; Davies v. Peoples Ry. Co., 159 Mo. 1; Michael v. St. Louis. M. F. Ins. Co., 70 Mo. App. 26. (7.) Plaintiff having admitted that there was a market value of the character of feed in controversy, the instruction given as to measure of damages was not correct. The measure of damages, in a case where there is a market value of goods, is the difference between the contract price and the market value of the goods at the time and place when and where by the contract they were to be delivered, if the goods have such a market value, and, where they have no market value, the difference between the contract price and reasonable value of the goods. Consumers' Glue Co. v. Samuel Binghams Son

Mfg. Co., 193 Mo. App. 90. (8) Where evidence inadmissible under the petition was received, defendant is entitled to introduce evidence to controvert same. Hays v. Metropolitan Street Ry. Co., 182 Mo. App. 393; Blair v. Marks, 27 Mo. 579; Bethany Savings Bank v. Cushman, 66 Mo. App. 102; Trustees of Christian Univ. v. Hoffman, 95 Mo. App. 498. (9) Plaintiff was guilty of misbranding and adulterating the feed manufactured in Missouri and used by him in interstate commerce. United States v. 7 cases Echman's Alterative, 36 Sup. Ct. 190; United States v. 40 bbls. and 20 kegs of Coca Cola, 36 Sup. Ct. 573. (10) It is the court's duty to tell the jury the legal effect of the contents of letters where they are unambiguous. St. Paul Fire & Marine Insurance Co. v. Garnier, 196 S. W. 980; Woldert Grocer Co. v. Pillman, 176 S. W. 457; Mount v. Neighbors' Implement & Vehicle Co., 189 S. W. 614; United Brotherhood of Carpenters, etc., v. Luck, 189 S. W. 1036; Farmers' Union Merc. Co. v. Pinkerton, 194 S. W. 709; Radford and Guise v. Practical Premium Co., 188 S. W. 562; Thompson on Trials, secs. 1065, 1068. (11) Where, at the execution of a writing an oral stipulation is entered into, or a condition is annexed upon faith of which the writing is executed, parol evidence is admissible, though it materially varies the terms of the contract. Excelsior Saving Fund & Loan Assn. v. Fox, 98 Atl. 593; Ware v. Allen, 128 U. S. 590, 32 Law Ed. 563; Bowser & Co. v. Fountain, 128 Minn. 198, L. R. A. 1916B, 1036; Beach v. Nevins, 162 Fed. 129, 18 L. R. A. (N. S.) 288; Simrall v. Amer. Multigraph Sales Co., 158 S. W. 172 Mo. App. 384, 388; St. Joe Hay & Feed Co. v. Brewster, 195 S. W. 71. (12) Evidence should not be excluded as irrelevant which would have a tendency, however remote, to establish the probability and improbability of the fact in controversy. Wood v. Finson, 91 Me. 280, 284; Livingston v. Stevens, 122 Ia. 62, 67; Mutual Life Ins. Co. v. Armstrong, 117 U. S. 591, 29 Law Ed. 997; Gardner v. Meeker, 169 Ill. 44; Slater?Meyers Co.

198 M. A.—43

v. De Moiest Spoke & Handle Co., 94 Ga. 687; Eames v. Kaiser, 142 U. S. 488, 35 Law Ed. 1091; Davis v. Vories, 141 Mo. 234, 241; Whitmore v. Supreme Lodge Knights & Ladies of Honor, 100 Mo. 36, 48; Smith v. National Benefit Society, 9 L. R. A. 616. The law seems to be that when there is nothing in the agreement to exclude the inference the parties, when engaged in the same business, are always presumed to contract with reference to the usage or custom which prevails in the particular trade or business to which the contract relates, and they will be presumed to have knowledge of such custom; and it is not necessary in such a case to prove actual knowledge, or that the custom is so general or universal that knowledge may be presumed. Eaton v. Coal Mining Co., 161 Mo. 35; Holder v. Swift, 147 S. W. 691; Smith & Co. v. Russell Lumber Co., 82 Conn. 116; Insurance Co. v. Reymershoffer, 56 Tex. 234, 238; Bowles v. Driver, 112 S. W. 440; Heyworth v. Miller Grain Co., 174 Mo. 171. Defendants are not liable to plaintiff under the contract entered into between Goeke & Company and the defendants, because the contract sued upon was entered into prior to June 24, 1912, and defendants' instruction J should have been given.

*Abbott & Edwards* for respondent.

(1) If the promisee signs and returns a written offer it amounts prima facie to an acceptance. 1 Page on Contracts, page 85; 1 Elliott on Contracts, page 51; Taylor Co. v. Bannerman, 97 N. W. 918; Barker v. Banks, 15 La. 453; Elastic Tip Co. v. Graham, 53 N. E. 315; 9 Cyc., page 260. (2) It frequently happens that contracts on their face, and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. Lewis v. Atlas Mutual Life In-

surance Co., 61 Mo. 538; 6 Ruling Case Law, page 689; 9 Cyc. 333; Wise v. Ray, 3 G. Greene's 430; Jernigan v. Wimberly, 1 Ga. (1 Kelly) 220; Lane & Nearn v. Warren, 115 S. W. 903; Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137. (3) ·Not only is the contract sued upon not wanting in mutuality since signed by plaintiff, but it is also not wanting in mutuality because from part performance as well as from the letters that passed between the ·parties after its execution, an acceptance will be implied. Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137; Eaton v. The Wear Coal Co., 125 Mo. App. 194. Williams v. Implement Co., 198 S. W. 428. (4) Defendants' peremptory instruction offered at the close of. the entire case should not have been given. Church v. Proctor, 66 Fed. 240. (5) Appellants contend that whether a contract is contrary to public policy is a question of law to be determined from the circumstances of the case, and that this was a question of law as was also the legal effect of the letters that passed between the parties after June 17, 1912. (See defendants' instructions given.) One defined misbranding and the other stated that "then plaintiff cannot recover in this action for such part of the feed contracted for with which it was intended to violate the law." 10 Ruling Case Law, 946. (6) It was proper ·for plaintiff to state his intention as to future shipments. Furthermore, appellants brought out the testimony on cross-examination. 10 Ruling Case Law, 946; Section 170, Jones on Evidence; 23 L. R. A. (N. S.) pages 373-393 and 403; St. Louis Fair Ass'n. v. Carmody, 151 Mo. 575; Buckingham v. Fitch, 18 Mo. App. 99; Vansickle v. Brown, 68 Mo. 634; The State to Use v. Mason, 23 Mo. App. 329; The State v. Palmer, 88 Mo. 573; The State v. Williams, 95 Mo. 249; ·State v. Banks, 73 Mo. 592. (7) To warrant assuming that an actor had the same intention, the acts mush be so closely connected in point of time that it is not probable that there has been a change of mind and of such a similar nature that it is not probable that other in-

fluences played upon him to act. The question of time during which other acts may be proven seems to be largely within the trial court's discretion. 10 Ruling Case Law, 939; State v. Murphy, 17 L. R. A. (N. S.) 615. This whole matter of intention was developed by defendants. (8) "Ordinarily the measure of damage for breach of contract to furnish an article is the difference between the contract price and the market price of the article at the time and place of delivery. But there are special features involved in this case which renders such rule inapplicable. . . . The evidence shows that there was no open market for this particular article." And it also shows that to obtain the feed only one mill was available. Gallagher v. Baird, 54 App. Div. 404; 2 Sutherland on Damages, sec. 652; Wall v. Ice & Cold Storage Co., 112 Mo. App. 666. (9) Defendants sought to prove that there is a custom which relieves manufacturers of grain of the obligation to furnish feed when the manufacturer's mill is destroyed by fire, despite the fact that the contract contains no exception to the absolute duty provided therein. This evidence was properly excluded. Covington v. Kanawha Coal Co., 3 L. R. A. (N. S.) page 248; State v. Public Service Commission, 189 S. W. 379; Renick v. Brooke, 190 S. W. 642. (10) This contract is absolute on its face. It is not incomplete. Its essential purposes are capable of substantial accomplishment regardless of the destruction of any one mill. The destruction of the mill could have been provided against in the contract. It is not apparent from the contract itself that because of its nature it was dependent upon the continued existence of any one mill. For all of the foregoing reasons, testimony with reference to the destruction of the mill by fire constituted no defense. 9 Cyc. 627. (11) The terms of the contract of June 17, 1912, being unconditional, cannot be varied, altered and contradicted by a letter of April 29, 1910, to which no assent was even given. Coons v. Chambers, 1 Abbott's Practice, 165; Loper v. United States, 13 Court of

Claims Reporter, 269; Harper v. Raymond, 7 Abbott's Practice, 142; Milske v. Steiner, 103 Md. 235.

ALLEN, J.—This is an action to recover for the breach of a written contract upon which, it is alleged, defendants became liable to plaintiff by assuming the same and agreeing to perform the obligations of the other party thereto. It is unnecessary to specially notice the pleadings. The petition is in the usual form. The defenses set up and relied upon will be noticed in the course of the opinion, so far as may appear necessary to a disposition of the appeal.

The trial below, before the court and a jury, resulted in a verdict and judgment for plaintiff in the sum of $5440, with interest thereon, aggregating in all $6110.93; and the case is here on defendants' appeal.

Plaintiff, a resident of Milwaukee, Wisconsin, was engaged in selling "mixed feed" for stock, which he shipped into various States. He had no mill or plant, but contracted in advance with others to supply the product with which to fill the contracts entered into by him with his customers. On June 17, 1912, one Goeke and one Dickinson, copartners doing business as F. W. Goeke & Company (hereinafter referred to as "Goeke & Company") were engaged in operating a certain mill or plant in the City of St. Louis, and on that day they entered into a written contract with plaintiff as follows:

"F. W. Goeke & Co., St. Louis, Mo., agrees to sell United States Sugar Feed, Milwaukee, Wis., Co., one hundred and fifty (150), 400-100 lb. sacks each, feed, to be shipped as follows:

| | |
|---|---|
| 5 cars June | 30 cars October |
| 15 cars July | 20 cars November |
| 30 cars August | 20 cars December |
| 30 cars September | |

as per following formula per ton

1000 lbs. Elevator Goods
250 lbs. Cotton Seed Meal

> 300 lbs. Molasses
> 350 lbs. Peat or Humus
> 100 lbs. Grain Screenings

ground and dried as per last year. Protein to be 13 to 14%, Fat 2 to 3%, Fibre 12%.

"Directions for June immediate, for July by July 15th, August, September, October by the 10th of each month, and November by November 1st and December by the 10th.

"Sight drafts to be paid on demand, bills lading attached. Price $19.50 per ton New York rate points. "F. W. GOEKE & Co., U. S. SUGAR FEED Co.,

"Per J. F. HEFFERNAN."

On or about July 2, 1912, the firm of Goeke & Company sold its business, trade and good will, etc., to the defendants, Karl Neumond, Eugene Neumond and one Eisemann, copartners doing business under the firm name of "K. & E. Neumond;" and as a part and parcel of the written contract between Goeke & Company and these defendants, whereby such sale was effectuated, the defendants agreed to carry out all contracts of Goeke & Company of such nature as is the contract sued upon. On July 16, 1912, the defendants notified plaintiff they had acquired the plant and business of Goeke & Company, and that they would continue the business and would carry out all contracts made by the latter company; and to this plaintiff replied that he assumed that defendants were "responsible people," and that he would look to them to carry out the contract.

It appears that five car-loads of the feed were shipped by Goeke & Company in June, 1912, as called for by the contract; and that of the fifteen car-loads which, by the terms of the contract, were to be shipped in July, nine were delivered; but on July 28, 1912, defendants' mill was destroyed by fire, and that no further deliveries were made under the contract. On the day following the destruction of the mill defendants notified plaintiff thereof, saying that it would be

impossible to furnish any more feed at that time. On August 1, 1912, defendants wrote a letter to plaintiff saying: "We beg to state that we will not ship any more feed against the contract made on June 17th." It appears that when the last-mentioned letter was written plaintiff was enroute to the City of St. Louis where he arrived on the evening of August 1st. On the following day a meeting was held in defendants' office at which plaintiff, his counsel, defendant Eiseman and defendants' counsel were present. Plaintiff requested that the feed be furnished in accordance with the contract, but was told that defendants would not furnish it. It is said that defendant Eiseman suggested that plaintiff "go out and buy the feed;" and that plaintiff thereupon gave defendant the names of the only "concerns" operating mills, five in number, that he thought would be able to "turn out" feed of this general character in quantities called for by the contract. According to the testimony of both plaintiff and defendant Eisemann it was agreed that plaintiff would visit these five mills, located in different cities, with the view of obtaining the feed at the lowest possible price; and that defendants, on their part, would likewise make efforts to secure a contract for the furnishing of the feed. It appears that plaintiff visited all of the mills mentioned, and—defendants having obtained no results in the meantime—finally secured a contract from the "American Milling Company" to manufacture and furnish the desired quantity of feed at $21.50 per ton. The feed thus contracted for contained no "humus," as did that called for by the contract sued upon. The evidence is to the effect that plaintiff was unable to obtain a feed containing humus; but that the feed which plaintiff thus contracted for and obtained (though demanding a higher price in the market generally) was secured at the same price as if humus had been used therein.

Such further facts as may appear to be pertinent to questions discussed will be stated in the course of the opinion.

I. It is argued that the trial court erred in receiving the contract in evidence over defendants' objections. This assignment of error proceeds upon the theory that the contract was unilateral, lacking mutuality, and therefore unenforcible. But this view is obviously unsound. This contract provides for the sale by Goeke & Company to plaintiff of a certain definite quantity of mixed feed. Though the contract does not, in explicit words, recite that plaintiff agrees to purchase and pay for the same, this is clearly implied by the acceptance of the contract by plaintiff through the signing of his name thereto. Such was manifestly the intention of the parties (See Lewis v. Ins. Co., 61 Mo. 534, l. c. 538; 6 R. C. L. 689). And if the contract could be said to have been originally deficient in this respect (which we do not concede) the subsequent correspondence between the parties, and the part performance of the contract according to its terms, sufficed to render the contract mutually binding and enforceable (Laclede Const. Co. v. Tudor Iron Works, 169 Mo. 137, 69 S. W. 384; Eaton v. Coal Co., 125 Mo. App. 194, 101 S. W. 1140). The case is not one falling within the doctrine expounded in Cold Blast Transportation Co. v. Bolt & Nut Co., 114 Fed. 77, a leading case, followed by us in the recent case of Brown Paper Box Co. v. Mercantile Co., 190 Mo. App. 584, 176 S. W. 251.

II. The contention that the destruction of the mill by fire excused further performance of the contract under the circumstances is obviously without merit. Nor did the court err in rejecting testimony proffered by defendant with the view of showing the existence of a custom, "in the trade," to excuse the manufacturer in such cases where his mill is destroyed by fire. The contract is absolute upon its face, binding Goeke & Company to furnish the material in question. "If the party entering into a contract of this sort desires to protect himself against contingencies, it is incumbent on him to express the contingencies in his contract; and if he fails to do this, in the absence of fraud or mistake, he cannot show a custom to the effect that his absolute

written contract is not what it reads, but only a conditional engagement." [See Covington v. Kanawha Coal Co., 121 Ky. 681, 89 S. W. 1126, 3 L. R. A. (N. S.) 248; State v. Public Service Com., 189 S. W. 1. c. 379.] It is not a case where the subject-matter of the contract went out of existence, through no fault of the contracting party, rendering the contract incapable of performance. It cannot be said that these parties contracted upon condition that Goeke & Company's mill remain in existence; and consequently the doctrine which appellants invoke (See St. Joseph Hay & Feed Co. v. Brewster, 195 S. W. 71) has here no application.

III. A further assignment of error, discussed at length, with the citation of numerous authorities, is that the court erred in overruling the demurrer to the evidence interposed by defendants at the close of the entire case, for the reason that plaintiff was shown to have "aided in and insisted upon an illegal method in the performance and execution of the agreement sued upon," and hence "cannot compel the enforcement of the contract." This has reference to the stamping and tagging of the bags containing the feed shipped under the contract, by which, it is said, the pure food laws, in force in the jurisdictions where the product was sold, were violated.

The written agreement makes no provision concerning the matter of bagging or tagging the goods, and there was no arrangement regarding this at the time of the execution of the contract. The bags contained in the five cars shipped in June—the only cars shipped by Goeke & Company under the contract—bore tags reciting that the feed contained 15 per cent. to 16 per cent. protein, 3 per cent. fat and 12 per cent. fibre; and the bags were likewise so stamped. The tags also indicated that the mixture was composed of cotton seed meal, wheat, corn, oats, malt sprouts, screenings, alfalfa meal and molasses. As appears above, the contract called for 13 per cent. to 14 per cent. protein and 2 per cent. to 3 per cent. of fat; the mixture to be

composed of "elevator goods," cotton seed meal, molasses, humus and screenings. The evidence is, however, that Goeke & Company had furnished plaintiff with an analysis showing that the product as manufactured ran as high as 15.18 per cent. protein and 2.3 per cent. fat. And according to the testimony for plaintiff, by the term "elevator goods," used in the contract, was meant "a combination of different kinds of ground grain."

Plaintiff admitted that the bags were "tagged wrong," and that there was a "technical violation" of the law in this respect. In this connection, however, he testified at length, by way of explanation, as to the circumstances under which this occurred; this having been brought out by the questioning of counsel for defendants. On cross-examination of plaintiff, defendants' counsel, after referring to the percentage of protein and fat called for by the contract, asked plaintiff: "Why did you order this feed packed in bags containing a different analysis?" Plaintiff thereupon testified, in substance, that in June, 1912, he was in the State of New York, and that, under the contract, it was necessary for him to give "immediate" shipping directions for the five cars to be shipped in June; that he was unable to leave New York at the time, and in order not to lose the benefit of the contract he directed Goeke & Company to use the same tags, and the same stamping upon the bags, as had been used in shipping feed made by that firm for plaintiff during the previous year; that he contemplated taking the matter up with the authorities in New York, in regard to a change in a "statement" previously filed by him in that State, intending then to come to St. Louis and get the matter "straightened up;" that before he could attend to those matters he was called to his home in Milwaukee where he kept his office—sometime in July— and found his desk "piled up with papers," and that within a short time, and before he could dispose of the matters demanding his immediate attention at home, the fire occurred. In the meantime plaintiff, on July

23d, in response to a letter of defendants written on July 20th, directed defendants to stamp and tag the feed "as last year;" and shipments made in July were accordingly so labelled.

In this connection it should be stated that the testimony for plaintiff (which is uncontradicted) is that when plaintiff and his attorney on August 2, 1912, at defendants' office in the City of St. Louis, demanded that defendants carry out the contract, defendants' counsel referred to the tags that had been used, saying: "I am not sure about this tag. . . . I am not sure that this tag correctly states the ingredients;" that plaintiff's counsel then said: "Brand and tag this feed any way that complies with the law. What we are here for is to ask for the feed." . . . "Brand and tag it any way that is right. We want the feed."

It is unnecessary to make further reference to the evidence adduced touching this matter. We think that the court did not err in refusing to peremptorily direct a verdict for defendants on this ground. The contract on its face has no taint of illegality. The tagging and branding of the feed related to the method of performing the contract. It may be conceded that although a contract be valid on its face, it is competent to show that it was intended by the contracting parties to violate the law in the performance thereof; and that the law, in accordance with the maxim, *ex dolo malo non oritur actio,* will not aid either party in carrying out an illegal and fraudulent purpose. We are here concerned with plaintiff's right to recover for defendants' failure to deliver the 136 cars remaining undelivered under the contract. It cannot by any means be said to have been conclusively shown, we think, that plaintiff contemplated an illegal method of performing the contract throughout, or that he sought to obtain the feed remaining undelivered for an unlawful purpose.

The cases cited by appellants which deny a recovery of the price of goods sold contrary to law (e. g. intoxicating liquors) are not here directly in point. In Church v. Proctor, 66 Fed. 240, cited and relied upon

by appellants and respondent alike, the facts were similar to those here involved, and we regard the decision therein as here quite persuasive. The suit was one for damages for the defendant's failure to deliver certain fish—menhaden—in accordance with his contract; and in defense it was contended that plaintiff's purpose in buying the menhaden was to sell the same as mackerel under false labels, contrary to law. In reversing the judgment and remanding the cause, for errors committed at the trial, the court, referring to the defense mentioned above, said:

"If upon any subsequent trial this issue should be raised, and evidence adduced in support thereof, we think the jury should be instructed that no damages can be recovered, and no action maintained, covering any period in which the plaintiff below contemplated, or was actually engaged in, placing upon the market the fish described in the contract, under false, deceptive and misleading brands, designed to attract and induce trade. During the time he entertained such purpose (Cowan v. Milbourn, L. R. 2 Exch. 230, 236; Materne v. Horwitz, 101 N. Y. 469, 5 N. E. 331), or was actually engaged in such business, the law will not help him."

In the case before us, the learned trial judge, as appears from instructions given at the instance of both plaintiff and defendants, proceeded upon the theory that, with respect to this issue, plaintiff's right to recover was dependent upon his intent or purpose in making use of the feed contracted for; or, as stated in an instruction given for defendants, that "plaintiff cannot recover in this action for such part of the feed contracted for with which it was intended to violate the law." In this we think that the court did not err.

It may be conceded that with respect to the violation of a "pure food statute" the question of intent is not material. But in this case, owing to the character of the defense asserted, it became essential to determine what the parties, or plaintiff, intended to do with respect to the performance of the contract. We think

that the court below took the correct view of the matter, and that the demurrer to the evidence was well ruled.

IV. We perceive no merit in the contention that error was committed in allowing plaintiff to give the testimony, supra, as to his intentions. Testimony of this character on the part of plaintiff was first called forth by a question of defendants' counsel on cross-examination, set out above, viz: "Why did you order this feed packed in bags containing a different analysis?" But this we pass. In Vansickle v. Brown, 68 Mo. 627, l. c. 634, it is said: "When a party to a suit is admitted as a witness, he may testify as to the intention with which he did an act, whenever it is material to the issues to determine what such intention was." [And see Chambers v. Chambers, 272 Mo. 262, l. c. 282, 283, 127 S. W. 86; Wheeler v. Chestnut, 95 Mo. App. 546, l. c. 556, 557, 69 S. W. 621.] Such testimony is admissible for what it may be worth, to be considered by the court or jury in connection with the acts and conduct of the party, shown in evidence, touching the matter. [Chambers v. Chambers, supra.]

V. Nor do we think that the court erred in refusing to admit in evidence certain contracts entered into between plaintiff and Goeke & Company, and certain letters passing between them, in 1909, 1910 and 1911. Such evidence was sought to be introduced by defendants for the purpose of showing that plaintiff had been "in trouble" with certain "agricultural departments," because of false labels upon his feed. It appears that plaintiff had previously shipped hundreds of car-loads of feed of this general character manufactured for him by Goeke & Company, in the years mentioned. The letters in question were written in regard to certain shipments as to which, it is said, plaintiff had experienced trouble either with his customers or with State agricultural departments; and, among other things, they reveal that it was a matter in controversy between plaintiff and Goeke & Company, as to which of the two parties were at fault with respect to the shipments

referred to. Complaint is specially made as to the rejection of these letters, but the particular transactions to which they relate were not so connected with the matter in controversy, as to time or otherwise, we think, as to make them here admissible. And had this evidence been introduced it would have raised various separate issues regarding plaintiff's acts and conduct in prior years, and would have served only to obscure the real issues on trial. We consequently rule this assignment of error against the appellants.

VI. Appellants complain of plaintiff's instruction on the measure of damages. This instruction is as follows:

"The court instructs the jury that if you find for plaintiff, you should take into consideration what would be a full and just compensation to him for his loss and damages, if any, by reason of the failure of defendants to deliver the feed mentioned in the evidence, and in determining what this compensation should be, you should take the difference, if any, between the actual cost of the best available substitute (provided you further find it was impossible at the time to procure feed exactly like that contracted for at a lower price than that at which the substitute could be obtained, and that plaintiff used due diligence in procuring the substitute feed and bought on the best terms he could), and the price and value that plaintiff agreed to pay for the feed under the contract made by F. W. Goeke & Company, with plaintiff and read in evidence, together with interest," etc.

It is true that ordinarily the measure of the vendee's damages resulting from a breach by the vendor of a contract of this character is the difference between the contract price and the market value of the goods at time and place when and where by the contract they were to be delivered, if the goods have such a market value, or if they have no market value then the difference beween the contract price and the reasonable value of the goods (Consumers' Glue Co. v. Manufacturing Co., 193 Mo. App. 90, 181 S. W. 1086, and authori-

ties there cited). But in the case before us the evidence is that the feed in question could not be procured on the open market. It was necessary to have it manufactured according to special formula. And the reasonable value thereof may be said to be the reasonable cost of procuring it. It is true, as appellants say, that plaintiff in this testimony stated that feed of this character had a market price or value, but this had reference to the price at which the mixture, or the nearest available substitute, could be procured under a contract for its manufacture in the quantity called for by the contract. Plaintiff explained, and all of the evidence shows, that the mixture called for by the contract could not be procured in the open market; that it was necessary to have the product specially manufactured. It could not thus be obtained containing humus, and plaintiff therefore, in accordance with defendants' directions, obtained a substitute in which humus was replaced by another ingredient, but at the same price as if humus had been used. The testimony tends to show that the reasonable cost of manufacturing the nearest available substitute was at least $21.50 per ton. Plaintiff contracted for its manufacture at this price, the other prices quoted him being $23 or more per ton.

Under the circumstances we think that it was not error to give this instruction. In 2 Sutherland on Damages, section 652, p. 283, it is said:

"The agreement may relate to property which may not be found in the market and can only be produced at an expense greatly above the contract price. In such a case it has been held that if the course pursued by the purchaser in obtaining other like property, as timber, for example, was the only way it could be obtained, or was a reasonable and prudent way of obtaining it, irrespective of any special use or exigence, the difference between the contract price and the higher cost of the property thus obtained may be recovered by the purchaser as damages naturally arising from the breach itself." In this connection see also Wall v. Ice

& Cold Storage Co., 112 Mo. App. 659, 87 S. W. 574; 2 Sedgwick on Damages (9 Ed.), section 734, p. 1534.

In any event, we regard it as quite clear that defendants have no just ground to complain of this instruction. As said above, the uncontroverted evidence is that plaintiff procured the contract for the manufacture of the feed under and by virtue of an arrangement between him and the defendants which had in view the minimizing of the damages as far as possible. Having thus authorized plantiff to procure a contract on the best terms available, defendants ought not now be heard to complain that a different measure of damages should be applied. And, in view of the evidence adduced, we do not perceive how defendants can possibly be said to have been injured by the instruction. [See Harrison Wire Co. v. Hall & Willis Hdw. Co., 97 Mo. 289, 10 S. W. 619.]

Other questions suggested are either disposed of by what we have said above or do not warrant discussion. We perceive no reversible error in the record, and it follows that the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.